UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| DBW PARTNERS, LLC<br>d/b/a THE CAPITAL FORUM,<br>  1200 New Hampshire Avenue, N.W.,<br>  Washington, D.C. 20036 | :<br>:<br>:<br>: | Civil Action No. 19-311 |
| Plaintiff, | :<br>: | |
| v. | :<br>: | |
| | :<br>: | JURY TRIAL DEMANDED |
| BLOOMBERG, L.P. and<br>BLOOMBERG FINANCE, L.P.<br>  731 Lexington Avenue<br>  New York, New York 10022 | :<br>:<br>:<br>: | |
| Defendant. | :<br>: | |

---

## COMPLAINT

Plaintiff, DBW Partners LLC, d/b/a The Capitol Forum ("Plaintiff" or "Capitol Forum"), for its complaint against Defendants Bloomberg, L.P. and Bloomberg Finance, L.P. (collectively "Defendants" or "Bloomberg") alleges as follows:

### INTRODUCTION

1.  This is an action for: (1) copyright infringement; (2) contributory copyright infringement; (3) misappropriation of proprietary information under the "hot news" doctrine; and (4) tortious interference with contractual relationships, arising from Bloomberg's illegal solicitation, receipt, and use of Capitol Forum's copyrighted and proprietary reports.

2.  The Capitol Forum is an investigative news and analysis company, in the business of providing time-sensitive and in-depth reports to its subscribers, including investors, industry stakeholders, law firms and policymakers. It publishes a premium internet-based subscription

service, releasing anywhere between 30 and 50 reports each month on matters relating to mergers and acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement. The Capitol Forum's reports are extensively researched and carefully written, often the product of months of work, and its subscribers rely on these reports to make investment and business decisions. Given the respected nature of Capitol Forum and its journalists, the release of its reports will often affect the price of publicly traded stocks—and will do so in a matter of minutes.

3. The Capitol Forum's reports constitute a fundamental and competitively significant component of its business. These reports are provided only to its subscribers and to other authorized recipients, and each report contains a copyright notice and disclosure that its contents may not be distributed or reproduced without Capitol Forum's permission.

4. However, despite the copyrighted and proprietary nature of Capitol Forum's content, Bloomberg has been illegally soliciting, obtaining, summarizing, and distributing Capitol Forum's market analyses. Within minutes of the release of many of Capitol Forum's reports, Bloomberg will surreptitiously obtain the report from one or more of Capitol Forum's subscribers, and then republish a summary of that report on its own "First Word" copyrighted subscription service, usually including direct quotations from the Capitol Forum report. Bloomberg's free-riding activities constitute a violation of the copyright laws of the United States and Capitol Forum's ownership rights in its proprietary material.

5. Bloomberg's infringement is willful. Bloomberg knows that this material is copyrighted. It knows that it is illegal to solicit and induce copyright infringement. It knows that it is illegal for Capitol Forum's subscribers to transmit the material to it. It knows that its receipt and summarization is prohibited by the copyright laws—and not excepted from copyright

protection by the "fair use" doctrine. Indeed, Bloomberg itself warns its subscribers—and the public—that the summarization of its own copyrighted material is illegal. Yet, and ironically, that is precisely what Bloomberg is doing with respect to Capitol Forum's copyrighted material.

6. By soliciting and obtaining Plaintiff's copyrighted and proprietary material and by misappropriating the creative and original aspects of Plaintiff's copyrighted and proprietary material, Bloomberg has caused significant injury to Capitol Forum, entitling Capitol Forum to compensatory damages and equitable relief, injunctive relief, punitive damages, and statutory damages in the amount of $150,000 per violation, as well as an award of attorneys' fees.

## PARTIES

7. Plaintiff DBW Partners LLC is a District of Columbia limited liability company, doing business as The Capitol Forum. Capitol Forum maintains its principal place of business at 1200 New Hampshire Avenue, N.W., Washington, D.C. 20036.

8. Defendant Bloomberg L.P. is a Delaware limited partnership and maintains its principal place of business at 731 Lexington Avenue, New York, New York 10022.

9. Defendant Bloomberg Finance L.P. is a Delaware limited partnership. It is a subsidiary of Bloomberg L.P., and maintains its principal place of business at 731 Lexington Avenue, New York, New York 10022.

10. Bloomberg regularly transacts business in the District of Columbia, including by maintaining an office at 1101 New York Avenue, N.W., Washington, D.C. 20005.

## JURISDICTION AND VENUE

11. This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, as well as for common law claims. This Court has

original and supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (copyrights), and 1367 (supplemental).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events giving rise to the claims occurred in this district, the harm occurred in this district, and defendant is subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

### The Business of Capitol Forum

13. Capitol Forum is an investigative news and legal analysis company dedicated to informing policymakers, law firms, investors, and industry stakeholders on the effect of government policy on publicly traded corporations and market competition. Plaintiff invests substantial financial and human resources in generating original and high quality content for its reports relating to various sectors of the economy. The value of these reports to Capitol Forum's paid subscribers lies in the high quality of the investigative reporting and analysis and the timeliness with which that analysis reaches its subscribers.

14. Capitol Forum's independent reporting is the product of the full-time effort, skill, and judgment of, among others, analysts, journalists, and lawyers assigned to follow developments in particular markets. A typical report, for example, may include an in-depth analysis of the market impact of a significant policy or detail a parallel investigation of a major antitrust review.

15. The reports constitute proprietary and economically valuable analysis, and are presented in a manner that is intended to inform, among other things, a subscriber's investment decisions and provide guidance on a myriad of issues. The high quality and timeliness of Capitol

Forum's reporting is also a means of attracting new clients, and contributes to Capitol Forum's outstanding reputation in the financial, business, and legal worlds.

16. Plaintiff's reports, intended for its paid subscribers, contain copyright notices and state that they may not be reproduced or distributed without Plaintiff's permission. All reports and emails issued by Plaintiff contain a copyright notice that states that its contents "*and any proprietary content it enables [the recipient] to access are copyrighted by The Capitol Forum*" and that "*[r]ecipients shall not directly or indirectly reproduce, download or otherwise distribute. . . this content without prior written permission[.]*"

17. Plaintiff's reports are distributed by Plaintiff only to paid subscribers, or to other authorized recipients. All subscribers must execute The Capitol Forum Subscription Agreement ("Subscription Agreement"), which prohibits redistribution of Capitol Forum's content.

18. Much of Plaintiff's reporting has market impact. It is therefore important to Capitol Forum that the distribution of its reports be limited to its authorized recipients, as distribution of the information to non-authorized recipients would reduce the value of the information to its subscribers.

**Bloomberg's Infringement of Capitol Forum's Copyright**

19. Bloomberg is a well-known provider of financial and business information through various media, including a subscription-based service available to paid subscribers.

20. Bloomberg's subscription-based news service is in direct competition with Capitol Forum's subscription-based news service. Both Bloomberg and Capitol Forum provide business and regulatory news coverage, and target the same customer base.

21. Without authorization from Capitol Forum, and without Capitol Forum's consent, Bloomberg, by and through its employees, agents, and/or affiliates has caused to be made, and

5

has directed the copying and widespread distribution of the content of Plaintiff's copyrighted reports for its own financial gain.

22.     On numerous occasions, Bloomberg has impermissibly solicited and obtained Plaintiff's proprietary reports, has copied and quoted the most creative and original aspects of the reports, has published its own summary or abstract of the content of the reports in the form a "news alert," and has distributed these "news alerts" to its own subscribers on its "First Word" news service.  While Bloomberg cites Capitol Forum as the source of its summaries and abstracts, it does not undertake creative or journalistic efforts of its own to transform Plaintiff's work into something new or different from Capitol Forum's original report.  Other than including a current market price or a reference to a past article, Bloomberg does not add any of its own analysis or contribute any meaningful reporting to Plaintiff's work.  Bloomberg's "news alerts" simply extract the key information from Plaintiff's reports, and repackage Capitol Forum's work in a bullet-point form for a quick read.  The purpose of Capitol Forum's reports and Bloomberg's "news alerts" are precisely the same: to inform their subscribers of Capitol Forum's copyrighted and proprietary reporting.  Bloomberg's conduct constitutes direct infringement of Plaintiff's exclusive right under the Copyright Act to reproduce, use, and control its copyrighted works.

23.     Upon information and belief, Bloomberg has profited, and continues to profit, from the infringing news alerts.

### Bloomberg's Infringement is Willful

24.     Bloomberg's systematic infringement of Plaintiff's copyrights is willful. Bloomberg knows that its actions constitute copyright infringement and has otherwise acted with reckless disregard of the high probability of infringement.

25. Bloomberg is well aware that its summaries of Capitol Forum's material is not protected by the "fair use doctrine," which is the defense that infringers routinely assert when they are caught in a willful copyright violation. Over 40 years ago, the United States Court of Appeals for the Second Circuit, in *Wainwright Sec., Inc. v. Wall St. Transcript Corp.,* 558 F.2d 91, 95-96 (2d Cir. 1977), held that even though there can be no copyright in the news itself, such as the actions of a particular corporation, copyright law clearly protects the author's "analysis and interpretation of events," including the manner in which the author "structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments." The Second Circuit held that the summarization of a copyright holder's financial reports is not protected by the fair use doctrine and constitutes copyright infringement. *Wainright* has been consistently and routinely followed since it was decided in 1977, including by courts in the District of Columbia.

26. Bloomberg is specifically aware of the *Wainwright* proscription on the summarization of copyrighted material. In a recent case in which it was accused of copyright infringement, *The Swatch Group Mgmt. Services Ltd. v. Bloomberg L.P.*, Nos. 12-cv-2412, 12-cv-2645 (2d Cir.), Bloomberg recognized that the *Wainwright* case prohibits the summarization of an author's copyrighted research and analysis, and explicitly acknowledged that the fair use exception does not apply in these circumstances. Bloomberg's statements in this previous litigation confirm that it has actual knowledge that its conduct in repackaging and republishing copyrighted research analyses, and particularly analyses involving financial or corporate developments, does not qualify as a "fair use" and is thus illegal.

27. Moreover, Bloomberg BNA, a subsidiary of Bloomberg, L.P., has issued a copyright and usage guideline, available at https://www.bna.com/bna-copyright-usage-a4447/.

This guideline makes it clear that the summarization of one of its own copyrighted articles is illegal:

> Q: May I summarize a BBNA article and then post it on a web site or include it in a client newsletter?
>
> A: No. In summarizing the BBNA article, you would be making a derivative work of copyrighted material, which is not permitted.

This guideline further demonstrates Bloomberg's willful infringement of Capitol Forum's copyrighted work.  Simply put, Bloomberg is doing exactly what it forbids others to do.

### Bloomberg's Willful Contributory Infringement of Capitol Forum's Copyright

28.     Bloomberg is able to republish Capitol Forum's copyrighted material because it actively and affirmatively solicits Capitol Forum subscribers to forward the Capitol Forum publications to it, and it does so in exchange for providing the subscriber with information that the subscriber did not possess.  For example, commencing around December 2016, and continuing through December 2017, Joshua Fineman of Bloomberg's First Word news service induced one of Capitol Forum's subscribers, a West Coast hedge fund, to provide him with Capitol Forum reports in exchange for providing the hedge fund with market information that it did not possess. This arrangement continued until Capitol Forum learned of its subscriber's actions and demanded that they stop.  The hedge fund informed Mr. Fineman that it would no longer agree to trade information with him.  In response, Mr. Fineman acknowledged that their actions were illegal and stated that he would not put the hedge fund in that position again.  Despite this recognition of illegality, Mr. Fineman continues his infringing activities with respect to other Capitol Forum subscribers.  Mr. Fineman continues to induce and encourage other Capitol Forum subscribers to directly infringe Capitol Forum's copyright protections by soliciting those subscribers to send Capitol Forum copyrighted articles to him.

29. As such, Mr. Fineman and Bloomberg have induced, caused, encouraged, and materially contributed to the direct infringement by Capitol Forum's subscribers. Mr. Fineman and Bloomberg are aware that the Capitol Forum material is copyrighted and that Capitol Forum subscribers who transmit these reports violate Plaintiff's copyright by sending them to Bloomberg.  Every Capitol Forum report Bloomberg receives contains a statement noting that the material is copyrighted and that the reports may not be disseminated without the permission of Capitol Forum. Mr. Fineman's and Bloomberg's actions in soliciting and encouraging Capitol Forum subscribers to engage in direct infringement is illegal and willful.  They know it is illegal to encourage and induce others to violate copyright restrictions, yet they do so on a routine basis. They know that it is illegal to encourage and induce Capitol Forum subscribers to send copyrighted material to them, and Mr. Fineman has admitted to this illegality. The conduct of Capitol Forum's subscribers in transmitting these reports constitutes direct copyright infringement.  Bloomberg's solicitation of this information, and its encouragement and inducement to these subscribers to receive this information, constitutes contributory copyright infringement.

30. Because Bloomberg knows that it is illegal for the subscribers to transmit this information, its actions in requesting, inducing, and encouraging the unauthorized transmission of Capitol Forum's copyrighted material constitutes willful contributory copyright infringement.

### Bloomberg's "Hot News" Misappropriation of Capitol Forum's Reports

31. In addition to violating Capitol Forum's copyright protection, Bloomberg's conduct also violates Capitol Forum's proprietary rights under the common law tort of "hot news" misappropriation.  This doctrine prohibits free riding by competitors.  It prohibits a direct

competitor from acquiring and republishing time-sensitive news and analysis generated by its competitor and intended only for its competitor's subscribers and authorized recipients.

32. The timeliness of business and financial news reporting is essential to Capitol Forum's subscribers. Bloomberg competes directly with Capitol Forum for subscriptions by end-users, and Capitol Forum and Bloomberg's products are marketed and sold to the same customer base. Bloomberg's conduct in this regard necessarily diverts business opportunities from Capitol Forum.

33. This free riding on Capitol Forum's reports impairs Plaintiff's incentive to provide that reporting as an exclusive service to its existing subscribers and to potential new clients. To the extent that Plaintiff is deprived of the intended exclusivity of its reports as a result of its being made available by Bloomberg, such conduct by Bloomberg reduces the value of the reports to Capitol Forum's subscribers. It has already caused Capitol Forum subscribers to cancel their subscriptions because they can obtain the same Capitol Forum news and analysis from Bloomberg's First Word service. If left undisturbed, Bloomberg's conduct inevitably will, among other things, adversely affect Capitol Forum's willingness to continue to make substantial investments in generating and distributing such reports.

**Bloomberg's Tortious Interference With Contract**

34. Furthermore, Bloomberg has tortiously interfered with Capitol Forum's contracts and its contractual rights with its subscribers. All Capitol Forum subscribers must agree to be bound by the Subscription Agreement. The terms of the agreement specify that "no copying or distribution in any media is authorized" and that "forwarding content electronically is prohibited; posting content on an intranet or website is prohibited, and otherwise providing content to non-Users is prohibited."

35. Bloomberg is aware of these contractual restrictions: (1) these restrictions are commonplace in the electronic news-distribution business and Bloomberg, as a participant in this business, knew or should have known of the existence of such contractual restrictions; (2) Bloomberg itself has similar contractual restrictions in its subscription agreements; and (3) the Capitol Forum publications received by Bloomberg contain explicit notice of these restrictions.

36. Upon information and belief, Bloomberg intentionally procured a breach of these contracts by inducing and encouraging certain of Capitol Forum's subscribers to provide it with access to Capitol Forum's reports in violation of the Subscription Agreement.

## COUNT I
### (Copyright Infringement)

37. Each of the preceding paragraphs 1 through 36 is hereby incorporated herein by reference.

38. Capitol Forum owns a valid copyright in its proprietary reports.

39. Defendants have infringed Plaintiff's copyright in its proprietary reports by copying and distributing content from the reports to its own subscribers without Plaintiff's consent or authorization.

40. The copying of Plaintiff's reports is substantial in quantity and quality and reduces the economic value of the reports. Bloomberg has appropriated the most creative, original and significant portions of the reports and analyses, which represent a substantial investment of time, money and labor.

41. Upon information and belief, Bloomberg has continued to infringe Capitol Forum's copyright and has no intention to cease and desist such infringing activities.

42. Bloomberg's acts of copyright infringement, as alleged above, are causing Capitol Forum irreparable injury, and will continue to do so unless restrained and enjoined.

43. Bloomberg's conduct is in violation of the copyright owner's exclusive rights of reproduction, preparation of derivative works, and distribution under 17 U.S.C. §§ 106(1), (2), and (3).

44. The copyright violations committed by Bloomberg were willful. Bloomberg knew it was committing a copyright violation and otherwise acted with reckless disregard of the high probability of infringement.

45. Bloomberg's knowledge is demonstrated by statements made in its appellate brief in *The Swatch Group Mgmt. Services Ltd. v. Bloomberg L.P.*, Nos. 12-cv-2412, 12-cv-2645 (2d Cir.), in which Bloomberg conceded that the fair use exception does not apply when the copyrighted material is based on an analysis—and is not just reporting "facts."

46. Bloomberg's knowledge is also demonstrated by Bloomberg BNA's copyright guideline, which states that it is a copyright violation to summarize a Bloomberg article.

47. As a direct and foreseeable consequence of these acts, Plaintiff has been and continues to be damaged, and Plaintiff is entitled to statutory damages of $150,000 per violation, or actual damages and Bloomberg's profits, as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 504, 505.

## COUNT II
### (Contributory Copyright Infringement)

48. Each of the preceding paragraphs 1 through 47 is hereby incorporated herein by reference.

49. Bloomberg had actual or constructive knowledge of the infringement by one or more third party recipients of Plaintiff's copyrighted reports.

50. Bloomberg, by encouraging, inducing, and causing these third parties to provide such reports or the contents of those reports to it, has engaged in the contributory infringement of

a copyrighted work. Bloomberg has materially contributed to the direct copyright infringement of third parties.

51. The contributory copyright violations committed by Bloomberg were and continue to be willful.

52. As a direct and foreseeable consequence of these acts, Plaintiff has been and continues to be damaged, and plaintiff is entitled to statutory damages of $150,000 per violation, or actual damages and Bloomberg's profits, as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 504, 505.

## COUNT III
### (Hot News Misappropriation)

53. Each of the preceding paragraphs 1 through 52 is hereby incorporated herein by reference.

54. Through substantial efforts and at a significant cost to Capitol Forum, Capitol Forum gathers, analyzes and reports breaking news to its subscribers in a timely fashion through its reports.

55. The newsworthy information that Capitol Forum gathers, analyzes and reports is valuable to many of its customers in large part because of its time-sensitive nature.

56. Bloomberg's practice of copying and distributing the content of Capitol Forum's reports via its "First Word" news alerts constitutes actionable misappropriation because:

    (i)    Capitol Forum prepares the analysis contained in their reports at considerable cost and expense;

    (ii)    the value of the analysis is highly time-sensitive;

    (iii)    Bloomberg's use of the analysis constitutes free riding on Capitol Forum's efforts to prepare it;

(iv) Bloomberg's use of the analysis is in direct competition with the analysis offered by Capitol Forum; and

(v) the ability of other parties to free ride on Capitol Forum's efforts will substantially threaten Capitol Forum's incentive to continue to invest in its investigative reporting at the same level.

57. Bloomberg's conduct has damaged Capitol Forum while unjustly enriching Bloomberg and will continue to do so unless enjoined.

58. Bloomberg's actions were undertaken in bad faith, maliciously, willfully, wantonly, and in disregard of Capitol Forum's rights.

59. As a consequence of Bloomberg's misappropriation of hot news, Capitol Forum is entitled to injunctive relief and compensatory and punitive damages, in an amount to be determined at trial.

## COUNT IV
### (Tortious Interference With Contract)

60. Each of the preceding paragraphs 1 through 59 is hereby incorporated herein by reference.

61. Upon information and belief, Bloomberg acquires access to Capitol Forum's proprietary reports through one or more of Plaintiff's paid subscribers or authorized recipients.

62. Capitol Forum carefully restricts by contract the terms on which persons or entities may electronically access, use, and redistribute the news it publishes. Subscribers of Capitol Forum must agree to, and are bound by, the terms of the Subscription Agreement, which restricts use and redistribution of Capitol Forum's content. The Capitol Forum content sent to and then distributed by Bloomberg was acquired in breach of such contractual terms.

63. The Subscription Agreement between Capitol Forum and its subscribers constitutes a valid and enforceable contract.

64. In order to obtain access to Capitol Forum's content, Bloomberg, including one or more of its agents or representatives acting at Bloomberg's direction induced other persons to provide Bloomberg with access to Capitol Forum's reports in violation of the Subscription Agreement.

65. Bloomberg is aware of the restrictions on redistribution of Capitol Forum's content.  Yet with express knowledge of the existence of these contractual restrictions, and without justification, Bloomberg intentionally induced one or more third parties to breach the Subscription Agreement by providing Bloomberg with access to Capitol Forum's content.

66. By copying and redistributing Capitol Forum's news content, Bloomberg has induced third parties to breach their Subscription Agreements.

67. Bloomberg's interference with Capitol Forum's contractual relationships, in light of the facts plead above, constitutes willful misconduct, and has caused injury to Capitol Forum.

68. As a consequence of Bloomberg's tortious interference with Capitol Forum's contracts, Capitol Forum is entitled to injunctive relief and compensatory and punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

1. That the Court issue a declaration: (1) that Defendants have engaged in direct copyright infringement; (2) that Defendants have engaged in contributory copyright infringement; (3) that Defendants have misappropriated Capitol Forum's property in its commercially valuable and

time-sensitive analyses; and (4) that Defendants have intentionally induced third parties to breach Plaintiff's contractual rights;

2. That the Court issue a declaration that Defendants' acts and conduct set forth in the above prayer were willful;

3. That the Court issue an injunction, pursuant to 17 U.S.C. § 502 and the equity jurisdiction of this Court, directing that the Defendants, their agents, employees, or representatives, and all persons in privity therewith, are prohibited and permanently restrained from using the Capitol Forum's proprietary reports and from publishing, selling, marketing, or otherwise distributing any copies of any material which has been derived in any manner by violation of Capitol Forum's copyrighted and/or proprietary rights;

4. That the Court award Capitol Forum compensatory damages, restitution and disgorgement, and punitive damages, as well as statutory damages for Defendants' copyright infringement and contributory copyright infringement in the amount of one hundred and fifty thousand dollars ($150,000) for each act of infringement pursuant to 17 U.S.C. § 504;

5. That the Court require Defendants to pay Capitol Forum the costs of this action, pursuant to 17 U.S.C. § 505, including reasonable attorneys' fees; and

6. That the Court award such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: February 7, 2019                    Respectfully submitted,


                                           WILLIAMS LOPATTO, PLLC

                                           _____
                                           JOHN B. WILLIAMS (D.C. Bar No. 257667)
                                           FARA N. KITTON (D.C. Bar No. 1007793)
                                           1200 New Hampshire Avenue, N.W.
                                           Suite 750
                                           Washington D.C. 20036
                                           Tel: (202) 296-1611
                                           jbwilliams@williamslopatto.com

                                           *Counsel for Plaintiff*