**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

DBW PARTNERS, LLC d/b/a THE CAPITOL
 FORUM,

                Plaintiff,

      v.

BLOOMBERG, L.P. and BLOOMBERG
 FINANCE, L.P.,

              Defendants.

Case No. 19-cv-00311-RBW

**DEFENDANTS BLOOMBERG L.P.'S and BLOOMBERG FINANCE L.P.'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF ALLEGATIONS ...............................................................................2

ARGUMENT ...................................................................................................................4

I.   ALL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER
     JURISDICTION UNDER RULE 12(B)(1) ...........................................................5

     A.   A Copyright Registration (Or At Least An Application For Registration) Is
          Required For Subject-Matter Jurisdiction..................................................5

     B.   Given The Absence Of Federal Question Jurisdiction Over The Copyright
          Claims, The Court Should Decline To Exercise Supplemental Jurisdiction
          Over The State-Law Claims.......................................................................7

II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT
     INFRINGEMENT OR CONTRIBUTORY COPYRIGHT INFRINGEMENT ...............8

     A.   The Complaint Does Not Identify The Allegedly Infringed Works .......................9

     B.   The Complaint Does Not Identify Bloomberg's Allegedly Infringing
          Works ...................................................................................................10

III. EVEN IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION
     OVER THE "HOT NEWS" MISAPPROPRIATION CLAIM, THE CLAIM
     SHOULD BE DISMISSED UNDER RULE 12(B)(6)...........................................11

     A.   The "Hot News" Misappropriation Tort Has Not And Should Not Be
          Recognized By D.C. Law .......................................................................11

          1.   "Hot News" Misappropriation Runs Afoul Of The Copyright
               Clause Of The Constitution And The Copyright Act .............................11

          2.   Public Policy Concerns Justify Rejecting "Hot News"
               Misappropriation...........................................................................14

     B.   The "Hot News" Misappropriation Claim Is Preempted By The Copyright
          Act........................................................................................................15

     C.   Even If Not Preempted, The "Hot News" Misappropriation Claim Fails To
          Allege All The Elements Of The Tort .....................................................17

IV.  EVEN IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION
     OVER THE TORTIOUS INTERFERENCE CLAIM, THE CLAIM SHOULD BE
     DISMISSED UNDER RULE 12(B)(6) ...............................................................21

     A.   The Tortious Interference Claim Is Preempted By The Copyright Act.................21

     B.   Even If Not Preempted, The Tortious Interference Claim Fails To Allege
          All The Elements Of The Tort ................................................................22

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Movie Classics Co. v. Turner Entm't Co.*,
  922 F. Supp. 926 (S.D.N.Y. 1996) .................................................................. 21, 22

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ...................................................................... 4, 22

*American Society for Testing and Materials, et al. v. Public.Resource.Org, Inc.*,
  896 F. 3d 437, 451 (D.C. Cir. 2018) ...................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 5, 18, 20

*Barclays Capital, Inc. v. Theflyonthewall.com.*,
  650 F.3d 876 (2d Cir. 2011) ..................................................................... passim

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ................................................................................. 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 5, 18

*Bitetto v. Rometty*,
  2018 WL 941736 (N.D.N.Y. Feb. 16, 2018) ............................................................. 9

*Broughel v. Battery Conservancy*,
  2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) ........................................................ 9, 10

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ................................................................................. 9

*Carnegie–Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ................................................................................. 7

*Chromologic LLC v. Yang*,
  2013 WL 12125537 (C.D. Cal. May 9, 2013) ........................................................... 7

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ......................................................................... 17

*Deppner v. Spectrum Health Care Res., Inc.*,
  325 F. Supp. 3d 176 (D.D.C. 2018) .................................................................... 7

*Durham Indus., Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980)...................................................................... 17

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) .................................................... 5, 6, 7, 22

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003).................................................................... 12, 13

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938)............................................................................. 12

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*,
   784 F. Supp. 2d 441 (S.D.N.Y. 2011)................................................ 17, 20

*Feist Publ's, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).......................................................... 12, 13, 14

*Fin. Info, Inc. v. Moody's Investors Serv., Inc.*,
   808 F.2d 204 (2d Cir. 1986)................................................... 19, 20

*Ford Motor Co. v. Autel US Inc.*,
   2015 WL 5729067 (E.D. Mich. Sept. 30, 2015)............................... 10

*Forest Park Pictures v. Universal Television Network, Inc.*,
   683 F.3d 424 (2d Cir. 2012).......................................................... 18

*Fox News Network LLC v. TVEyes*,
   43 F. Supp. 3d 379 (S.D.N.Y. 2014)............................................. 16

*Genetic Sys. Corp. v. Abbott Labs.*,
   691 F. Supp. 407 (D.D.C. 1988).................................................... 23

*Goffe v. Smith*,
   2009 WL 10694310 (D.D.C. Dec. 11, 2009)...................................... 6

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) .................................................... 4

*Griffin v. Acacia Life Ins. Co.*,
   151 F. Supp. 2d 78 (D.D.C. 2001) .................................................. 8

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987)........................................................ 4

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   723 F.2d 195 (2d Cir. 1983).................................................... 21, 22

*Houchins v. KQED, Inc.*,
  438 U.S. 1 (1978) ........................................................................................... 14

*Huffman v. Kelly*,
  239 F. Supp. 3d 144 (D.D.C. 2017) ........................................................... 4, 5

*Huffman v. Nielsen*,
  732 F. App'x 1 (D.C. Cir. 2018) ..................................................................... 4

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*,
  81 F. Supp. 2d 70 (D.D.C. 2000) ................................................................. 16

*International News Service v. Associated Press*,
  248 U.S. 215 (1918) ............................................................................... passim

*Jianqing Wu v. Special Counsel*,
  2015 WL 10761295 (D.C. Cir. Dec. 22, 2015) .............................................. 8

*Jianqing Wu v. Special Counsel*,
  Inc., 54 F. Supp. 3d 48 (D.D.C. 2014) .......................................................... 7

*Kamakazi Music Corp. v. Robbins Music Corp.*,
  522 F. Supp. 125 (S.D.N.Y. 1981) .............................................................. 22

*Koker v. Aurora Loan Servicing, LLC*,
  915 F. Supp. 2d 51 (D.D.C. 2013) .............................................................. 22

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ........................................................................................ 4

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ....................................................................... 5

*Lannan Found. v. Gingold*,
  300 F. Supp. 3d 1 (D.D.C. 2017) ................................................................ 23

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 4

*Mahnke v. Munchkin Prod, Inc.*,
  2001 WL 637378 (S.D.N.Y. June 7, 2001) ............................................ 10, 11

*Marshall v. Allison*,
  908 F. Supp. 2d 186 (D.D.C. 2012) ............................................................ 24

*Mead v. City First Bank of DC, N.A.*,
  616 F. Supp. 2d 78 (D.D.C. 2009) ................................................................ 8

iv

*Miller v. Holtzbrinck Publishers, LLC*,
  2008 WL 4891212 (S.D.N.Y. Nov. 11, 2008) ........................................................ 21

*Morrow v. United States*,
  723 F. Supp. 2d 71 (D.D.C. 2010) ........................................................................ 4

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
  497 F.3d 109 (2d Cir. 2007) .................................................................................. 13

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
  105 F.3d 841 (2d Cir. 1997) ........................................................................ passim

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
  299 F. App'x 509 (6th Cir. 2008) ........................................................................ 10

*Newborn v. Yahoo!, Inc.*,
  391 F. Supp. 2d 181 (D.D.C. 2005) ..................................................................... 9

*Newmyer v. Sidwell Friends Sch.*,
  128 A.3d 1023 (D.C. 2015) ................................................................................... 22

*Ochre LLC v. Rockwell Architecture, Planning & Design, P.C.*,
  2013 WL 3606123 (2d Cir. July 16, 2013) .......................................................... 20

*Potter v. Toei Animation Inc.*,
  839 F. Supp. 2d 49 (D.D.C. 2012) ....................................................................... 9

*Prunte v. Universal Music Grp., Inc.*,
  699 F. Supp. 2d 15 (D.D.C. 2010) ....................................................................... 13

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  2011 WL 166198 (N.D. Cal. Jan. 18, 2011) ........................................................ 10

*Ross v. Apple, Inc.*,
  2016 WL 8808769 (S.D. Fla. Dec. 30, 2016) ...................................................... 10

*Schmidt v. U.S. Capitol Police Bd.*,
  826 F. Supp. 2d 59 (D.D.C. 2011) ................................................................... 4, 5

*Sharp v. Patterson*,
  2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004) ........................................................ 10

*Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*,
  769 F. Supp. 1161 (D. Colo. 1991) ...................................................................... 11

*Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP*,
  303 F.3d 460 (2d Cir. 2002) .................................................................................. 13

*Strategy Source, Inc. v. Lee*,
    233 F. Supp. 2d 1 (D.D.C. 2002) ................................................................ 6, 24

*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) .......................................................... 5, 21, 22

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) ..................................................................... 4

*Trimble v. District of Columbia*,
    779 F. Supp. 2d 54 (D.D.C. 2011) ................................................................ 7

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ..................................................................................... 7

*Whitehead v. CBS/Viacom, Inc.*,
    315 F. Supp. 2d 1 (D.D.C. 2004) ............................................................... 13

*Whitehead v. Paramount Picture Corp.*,
    2000 WL 33363291 (D.C. Cir. Apr. 19, 2000) ........................................... 16

*Whitehead v. Paramount Pictures Corp.*,
    53 F. Supp. 2d 38 (D.D.C. 1999) ............................................................... 16

*Williams v. Curington*,
    662 F. Supp. 2d 33 (D.D.C. 2009) ....................................................... 15, 21

*ZilYen, Inc. v. Rubber Mfrs. Ass'n*,
    935 F. Supp. 2d 211 (D.D.C. 2013) ............................................................. 7

## Statutory Authorities

17 U.S.C. § 102(b) ............................................................................................ 13

17 U.S.C. § 107 .................................................................................................. 1

17 U.S.C. § 301 ................................................................................................ 16

17 U.S.C. § 411(a) ............................................................................................. 6

28 U.S.C. § 1331 ........................................................................................... 3, 4

## Rules and Regulations

Fed. R. Civ. P. 8 ................................................................................................ 9

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 5

Fed. R. Civ. P. 12(b)(1) .............................................................................. 1, 4, 5

Fed. R. Civ. P. 12(b)(6).......................................................................... 1, 4, 5, 8, 11, 20, 21

### Additional Authorities

Charles A. Wright & Arthur R. Miller,
   *Federal Practice and Procedure*, § 1350 (3d ed. 1998) ............................................................ 4

Defendants Bloomberg L.P. and Bloomberg Finance L.P. (collectively, "Bloomberg") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint, *see* ECF No. 1, filed by Plaintiff DBW Partners, LLC d/b/a The Capitol Forum ("Capitol Forum") pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## PRELIMINARY STATEMENT

Capitol Forum's attempt to use copyright law to chill legitimate news reporting should be rejected outright. The Complaint challenges reporting practices that are both in the public interest and essential to a functioning free press by asking this Court to prohibit Bloomberg from publishing news articles that report on Capitol Forum's reports—even though the releases of those reports in and of themselves (beyond just their contents) are newsworthy financial events that often move stock prices. But the law, and in particular, the doctrine of fair use, 17 U.S.C. § 107, protects the right of reporters to gather information and disseminate newsworthy facts, as Bloomberg has done here.

The Complaint also is dead on arrival because Capitol Forum has not identified a single copyright registration (or even an application for a copyright) for the Capitol Forum reports that purportedly have been infringed. That deficiency alone means that federal subject-matter jurisdiction over the copyright claims is lacking. Subject-matter jurisdiction aside, dismissal under Rule 12(b)(6) is warranted on the copyright claims due to other clear failures in Capitol Forum's Complaint, most notably Capitol Forum's failure to identify a single one of the Capitol Forum reports that were allegedly infringed or the Bloomberg news articles that allegedly infringed them.

Because the fatally-flawed federal copyright claims must be dismissed, Capitol Forum's state-law claims must also be dismissed for lack of supplemental jurisdiction. The state-law claims also are deficient for additional and independent reasons. Capitol Forum first asserts the theory of "hot news" misappropriation, but the Court need not adjudicate the claim brought under this oft-

rejected tort (which has never been recognized under DC-law) because it is preempted by the Copyright Act and is incompatible with the constitutional principle that facts are not subject to copyright protections.  Moreover, even if it were not preempted, and this court were inclined to make new DC-law recognizing a "hot news" misappropriation tort, Capitol Forum fails to state a claim under the narrow parameters of the tort.  Finally, Capitol Forum's tortious interference claim should be dismissed because it is premised upon Bloomberg's alleged unauthorized copying and is thus also preempted by the Copyright Act, and also fails to allege the required elements of the tort.

## STATEMENT OF ALLEGATIONS

According to the Complaint, Capitol Forum is a subscription-based news company, which publishes reports on topics including mergers and acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement.  Compl. ¶ 2.  It authors and issues between 30 and 50 such reports each month, and these reports constitute a "significant component of its business."  *Id.* ¶¶ 2–3.  Capitol Forum distributes these reports to paid subscribers, who must execute a subscription agreement prohibiting redistribution of Capitol Forum's content.  *Id.* ¶ 17.

Bloomberg is "a well-known provider of financial and business information."  *Id.* ¶ 19. Bloomberg's journalists credit the source of the information reported in its news articles.  *Id.* ¶ 22.

The Complaint alleges that Bloomberg obtained Capitol Forum's reports from Capitol Forum's subscribers and republished news alerts about the reports through Bloomberg's First Word service.  *Id.* ¶ 4.  Specifically, the Complaint asserts that a Bloomberg reporter "induced one of Capitol Forum's subscribers, a West Coast hedge fund, to provide him with Capitol Forum reports in exchange for providing the hedge fund with market information that it did not possess." *Id.* ¶ 28.  The Complaint alleges that Bloomberg, by reporting on the release of Capitol Forum's

reports and allegedly summarizing those reports, has violated Capitol Forum's proprietary rights in the Capitol Forum reports. *See id.* ¶¶ 4–5, 22, 25–26.

Capitol Forum alleges that Bloomberg is "aware that the Capitol Forum material is copyrighted," *id.* ¶ 29, further asserting that "each [Capitol Forum] report contains a copyright notice and disclosure that its contents may not be distributed or reproduced without Capitol Forum's permission," *id.* ¶ 3.[1]

Based on these alleged facts, the Complaint asserts that Bloomberg has directly infringed Capitol Forum's copyright. Capitol Forum also asserts that Bloomberg's "solicitation" of information from Capitol Forum's subscribers constitutes contributory copyright infringement because, Capitol Forum alleges, "Bloomberg knows that it is illegal for the subscribers to transmit this information." *Id.* ¶¶ 29–30. Capitol Forum invokes federal question jurisdiction, 28 U.S.C. § 1331, as the basis for this Court's subject-matter jurisdiction over the direct and indirect copyright infringement claims. *Id.* ¶ 11.

In addition to the copyright infringement claims, the Complaint also calls on the Court's supplemental jurisdiction for two state-law causes of action: "hot news" misappropriation and tortious interference with contract. *Id.* ¶¶ 11, 54–59, 61–68. The "hot news" misappropriation claim alleges that Bloomberg's First Word news alerts constitute "free riding" on Capitol Forum's efforts and that Bloomberg's news alerts directly compete with Capitol Forum's reports. *Id.* ¶¶ 31, 56. The tortious interference with contract claim alleges that "Bloomberg has induced third parties to breach their Subscription Agreements" by providing Capitol Forum articles to Bloomberg without Capitol Forum's permission. *Id.* ¶ 66. Capitol Forum contends that Bloomberg is aware

---

[1] Notably, the Complaint does not identify which Capitol Forum works have allegedly been infringed or which Bloomberg works did the purported infringing, nor does it allege that Capitol Forum has valid copyright registrations (or even applications) for the works at issue.

of the contractual restraints put on its subscribers because (1) such restrictions are common in the news-distribution business; (2) Bloomberg has similar restrictions in its subscription agreements; and (3) the Capitol Forum publications received by Bloomberg contain copyright notices.  *Id.* ¶ 35.

## ARGUMENT

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, a district court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," *Kokkonen*, 511 U.S. at 377, "the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject-matter jurisdiction." *Huffman v. Kelly*, 239 F. Supp. 3d 144, 153 (D.D.C. 2017) (Walton, J.), *aff'd sub nom. Huffman v. Nielsen*, 732 F. App'x 1 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 639 (2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

It is axiomatic that a district court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1998)).  "Ultimately,

the plaintiff bears the burden of establishing the Court's jurisdiction, and where subject-matter jurisdiction does not exist, the court cannot proceed at all in any cause." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (Walton, J.) (citations and quotations omitted).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, "legal allegations devoid of factual support are not entitled to this assumption." *Huffman*, 239 F. Supp. 3d at 153 (Walton, J.); *see, e.g.*, *Kowal*, 16 F.3d at 1276.

The Complaint's allegations fail to satisfy these standards, as explained below. Accordingly, the Complaint should be dismissed in its entirety.

# I.    ALL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER RULE 12(B)(1)

## A.    A Copyright Registration (Or At Least An Application For Registration) Is Required For Subject-Matter Jurisdiction

To establish a claim of copyright infringement, a plaintiff must demonstrate "both ownership of a valid copyright and that the defendant copied original or 'protectible' aspects of the copyrighted work." *Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1295 (D.C. Cir. 2002). An action for copyright infringement may not be brought "until preregistration or registration of

the copyright claim has been made in accordance with this title [or] . . . where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused." 17 U.S.C. § 411(a). "There is a split of authority . . . on whether [the Copyright Act] requires a plaintiff alleging copyright infringement to obtain certificates of *registration* from the Copyright Office prior to initiating a lawsuit" or whether mere copyright *applications* can suffice. *Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1, 2–4 (D.D.C. 2002) (Walton, J.) (emphasis added) (discussing split and holding that a copyright registration is a "jurisdictional prerequisite to filing an infringement suit in this Court"). The issue is currently pending before the Supreme Court. *See Fourth Estate Public Benefit Corp. v. Wall-Street.com*, No. 17-571 (argued Jan. 8, 2019). That the Supreme Court heard argument on this important issue just months ago suggests that Capitol Forum was aware of its pleading deficiency at the time it filed the Complaint.

This Court need not await the Supreme Court's decision to rule on Bloomberg's motion to dismiss because, even if the Supreme Court adopts the view that a mere application for a registration suffices, Capitol Forum's Complaint does not identify a single such application. The Complaint alleges only that Capitol Forum "owns a valid copyright in its proprietary reports," but not that Capitol Forum has applied for or obtained copyright registrations. Compl. ¶ 38. Absent these allegations, the Court lacks subject-matter jurisdiction over both Capitol Forum's direct copyright infringement (Count I) and contributory copyright infringement (Count II) claims. *See Goffe v. Smith*, 2009 WL 10694310, at *2 (D.D.C. Dec. 11, 2009) (dismissing copyright claims for lack of subject-matter jurisdiction for failure to plead copyright applications); *Strategy Source,* 233 F. Supp. 2d at 4 (dismissing copyright complaint for failure to allege copyright registrations);

*Chromologic LLC v. Yang*, 2013 WL 12125537, at *3 (C.D. Cal. May 9, 2013) (dismissing direct and contributory copyright infringement claims for failure to allege copyright registration).

**B.  Given The Absence Of Federal Question Jurisdiction Over The Copyright Claims, The Court Should Decline To Exercise Supplemental Jurisdiction Over The State-Law Claims**

When "a court dismisses all federal claims in a suit, it has the discretion to exercise—or decline to exercise—supplemental jurisdiction over any state-law claims that remain." *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (describing supplemental jurisdiction as a "doctrine of discretion" and not of "right"); *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (dismissing all federal claims and declining to exercise supplemental jurisdiction over remaining state-law claims).  In exercising this discretion, courts consider "judicial economy, convenience and fairness to litigants." *United Mine Workers*, 383 U.S. at 726.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).[2]

This is the "usual case" where it is appropriate to decline supplemental jurisdiction over the state-law claims of "hot news" misappropriation and tortious interference.  This case is in its infancy, and dismissing the state-law claims would not "waste judicial resources or require a District of Columbia court to duplicate this Court's efforts" since the Court has not developed a particular familiarity with the issues presented and extensive federal resources have not yet been expended.  *ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 935 F. Supp. 2d 211, 225 (D.D.C. 2013) (Walton, J.); *see also Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 57 (D.D.C. 2014), *aff'd sub*

---

[2]   The Complaint does not allege a separate basis for diversity jurisdiction.

*nom. Jianqing Wu v. Special Counsel*, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015) ("no undue inconvenience or unfairness to the litigants" from dismissing state-law claims where "case has not progressed in federal court past Defendants' Motions to Dismiss, and the Court has developed no particular familiarity with the issues presented"); *Griffin v. Acacia Life Ins. Co.*, 151 F. Supp. 2d 78, 81–82 (D.D.C. 2001) ("The interests of judicial economy and convenience do not favor exercising supplemental jurisdiction because this Court has not yet expended any resources on addressing the merits of the D.C. law claims").  Further, the parties have not engaged in any discovery, and as a D.C. resident, Capitol Forum will not be inconvenienced or prejudiced by filing its claims in a D.C. court.  *See Mead v. City First Bank of DC, N.A.*, 616 F. Supp. 2d 78, 81 (D.D.C. 2009) ("Having dismissed the sole federal claim alleged before discovery has begun, the court declines to exercise supplemental jurisdiction over the remaining counts of the amended complaint.").  In addition, as discussed below, the question of whether the District of Columbia should recognize a tort for "hot news" misappropriation under D.C. law is best left to local D.C. courts. *Cf. Barclays Capital, Inc. v. Theflyonthewall.com.*, 650 F.3d 876, 892 (2d Cir. 2011) ("*Fly*") ("Were we indeed called upon to consider the continued viability of the [hot news] tort under New York law, perhaps we would certify that issue to the New York Court of Appeals.")

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT OR CONTRIBUTORY COPYRIGHT INFRINGEMENT

Even if there were subject-matter jurisdiction over the copyright claims despite Capitol Forum's failure to identify any copyright registrations or applications, this Court should still dismiss these causes of action under Rule 12(b)(6) for failure to state a claim because the Complaint identifies neither the allegedly infringed nor the allegedly infringing works.

## A.     The Complaint Does Not Identify The Allegedly Infringed Works

To satisfy Fed. R. Civ. P. 8's pleading requirements, a complaint alleging copyright infringement must be sufficiently detailed to put the defendant on notice of his allegedly infringing conduct.  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 187 (D.D.C. 2005) (Walton, J.) ("Although Rule 8 requires only a short plain statement, this statement must be sufficient to provide the defendants notice of the claims alleged against them.").  Complaints that do not identify the particular allegedly infringed works at issue must be dismissed.  *See Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012), *aff'd*, 2012 WL 3055990 (D.C. Cir. July 18, 2012) (dismissing copyright infringement claims for failure to allege "the existence of specific works subject to the copyright claim, that the copyrights are registered, and the acts and time period during which the defendant allegedly infringed the copyright"); *Newborn,* 391 F. Supp. 2d at 187 (dismissing complaint where "plaintiff fails to identify the material or materials to which he claims has been infringed"); *see also Bitetto v. Rometty*, 2018 WL 941736, at *3 (N.D.N.Y. Feb. 16, 2018) ("to adequately plead copyright infringement, Plaintiff must identify which of his copyrighted works form the basis of his claim"); *Broughel v. Battery Conservancy*, 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009) ("[I]t is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying. Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim and which acts committed by defendants constitute infringement of her rights.").[3]

The Complaint does not identify the specific works Capitol Forum claims were directly or indirectly infringed by Bloomberg.  Rather, the Complaint makes only vague, blanket assertions

---

[3]     It is particularly important for a copyright plaintiff to identify the specific works it alleges have been infringed where, as here, copyright fair use is at issue.  *See American Society for Testing and Materials, et al. v. Public.Resource.Org, Inc.*, 896 F. 3d 437, 451 (D.C. Cir. 2018) (copyright fair use doctrine "calls for a case-by-case analysis") (quoting *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577–78 (1994)).

that "Capitol Forum owns a valid copyright in its proprietary reports" and that Bloomberg has "infringed Plaintiff's copyright in its proprietary reports."  Compl. ¶¶ 38–39.  Thus, the direct and contributory copyright claims must be dismissed.

**B.**     **The Complaint Does Not Identify Bloomberg's Allegedly Infringing Works**

In addition to failing to identify Capitol Forum's copyrighted works, the Complaint also fails to identify which of Bloomberg's news stories purportedly infringed those works.

Courts routinely dismiss copyright infringement claims when the complaint fails to identify a defendants' allegedly infringing works.  *See, e.g.*, *Ross v. Apple, Inc.*, 2016 WL 8808769, at *4 (S.D. Fla. Dec. 30, 2016) ("In order to state a copyright infringement claim, Ross must identify the particular expression to which he objects and explain in detail how that expression infringes on his rights."); *Ford Motor Co. v. Autel US Inc.*, 2015 WL 5729067, at *4 (E.D. Mich. Sept. 30, 2015) ("general allegations of copyright infringement which do not identify specific infringing materials are insufficient to state a claim") (citing *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008)); *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (dismissing copyright infringement claim where the "complaint makes only conclusory statements, reciting the statutory acts that constitute copyright infringement without providing any factual allegations to identify [defendant's] allegedly infringing acts or works"); *Broughel*, 2009 WL 928280, at *4 ("plaintiff must identify, with *specificity*, the original works that are the subject of her copyright claim and *which acts committed by defendants constitute infringement of her rights*") (emphasis added); *Sharp v. Patterson*, 2004 WL 2480426, at *14 (S.D.N.Y. Nov. 3, 2004) ("The obligation to identify the infringing and infringed works in a pleading is not satisfied by alleging a mass infringement of 69 different copyrighted letters by five different novels."); *Mahnke v. Munchkin Prod, Inc.*, 2001 WL 637378, at *6 (S.D.N.Y. June 7, 2001) (dismissing copyright

infringement claims for failure to identify with particularity a specific infringing work and the time

period in which the infringement occurred); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769

F. Supp. 1161, 1166 (D. Colo. 1991) (finding that plaintiff "must identify the allegedly infringing

works" in copyright infringement complaint).

The Complaint asserts generally that "[o]n numerous occasions, Bloomberg has

impermissibly solicited and obtained Plaintiff's proprietary reports, has copied and quoted the

most creative and original aspects of the reports, [and] has published its own summary or abstract

of the content of the reports." Compl. ¶ 22.  But the Complaint does not identify *which* Bloomberg

news stories are alleged to have "impermissibly" referenced Capitol Forum's reports, or which

"creative" and "original" components of those reports were allegedly copied.  Accordingly, for

this independent reason, the copyright infringement claims must be dismissed under Rule 12(b)(6).

For the reasons set forth in Point I.B, *supra*, if this Court dismisses the federal copyright

infringement claims under Rule 12(b)(6), it should decline to exercise supplemental jurisdiction

over the state-law "hot news" misappropriation claim and tortious interference claim.  But even if

this Court opts to exercise supplemental jurisdiction over those claims, they should be dismissed

for failure to state a claim under Rule 12(b)(6), as explained below.

## III.   EVEN IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER THE "HOT NEWS" MISAPPROPRIATION CLAIM, THE CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A.   The "Hot News" Misappropriation Tort Has Not And Should Not Be Recognized By D.C. Law

#### 1.   "Hot News" Misappropriation Runs Afoul Of The Copyright Clause Of The Constitution And The Copyright Act

No court applying D.C. law has yet recognized the tort of "hot news" misappropriation—

and no court ever should.  In the seminal "hot news" misappropriation case, *International News

Service v. Associated Press*, 248 U.S. 215 (1918) ("*INS*"), the Supreme Court recognized a tort

where one of the two news wire services at the time, INS (AP was the other), would "lift factual stories from AP bulletins and send them by wire to INS papers" holding these stories out as its own. *Fly,* 650 F.3d at 892. *INS*, however, is no longer good law, because the federal common law it established was abolished by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See Fly*, 650 F.3d at 894 (discussing the status of *INS* and the history of the "hot news" tort).

Supreme Court precedent since *INS* clearly holds that facts cannot be copyrighted: "That there can be no valid copyright in facts is universally understood." *Feist Publ's, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991). It clarified that "originality, not 'sweat of the brow,' is the touchstone of copyright protection in . . . fact-based works." *Id.* at 359–60; *see also id.* at 364 ("copyright rewards originality, not effort"). In other words, factual information may not be copyrighted, no matter how much labor was invested in gathering and compiling it. The Court continued:

> [A] subsequent compiler remains free to use the facts contained in an another's publication to aid in preparing a competing work . . . . It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation . . . . [H]owever, this is not some unforeseen byproduct of a statutory scheme. It is, rather, the essence of copyright, and *a constitutional requirement*. The primary objective of copyright is not to reward the labor of authors, but "to promote the Progress of Science and useful Arts." U.S. Const, art. I, § 8, cl. 8.

*Id.* at 349 (citations and quotation marks omitted, emphasis added).

*Feist*'s reliance on the Copyright Clause compels two conclusions: (1) a work must be original to qualify for copyright protection; and (2) the freedom to use facts—even to "free-ride" on facts gathered by others through great effort—is constitutionally protected. The Copyright Clause demands that, in order to "promote the Progress of Science and useful Arts," non-original works such as facts are available to any person to use and exploit, regardless of who discovered those facts or at what expense. U.S. Const, art. I, § 8, cl. 8; *see also Eldred v. Ashcroft*, 537 U.S.

186, 219 (2003) ("every . . . fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication") (*citing Feist*, 499 U.S. at 349–50).

Under *Feist*, courts have repeatedly confirmed that facts must remain in the public domain, free from any restraint or encumbrance. *See, e.g., Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 23 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) ("Ideas and facts contained in copyrighted works therefore are not protected even though the creative expression of those ideas or facts may be.") (citing *Feist*, 499 U.S. at 348); *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 9 (D.D.C. 2004) ("only original expression is protected, not facts") (citing 17 U.S.C. § 102(b)); *see also N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.,* 497 F.3d 109, 114 (2d Cir. 2007) ("[A]ll facts—scientific, historical biographical, and news of the day . . . may not be copyrighted and are *part of the public domain available to every person*.") (quoting *Feist*, 499 U.S. at 348, emphasis added); *Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP*, 303 F.3d 460, 466–67 (2d Cir. 2002) ("[Historical, scientific, or factual information belongs in the public domain, and . . . allowing the first publisher to prevent others from copying such information would defeat the objectives of copyright by impeding rather than advancing the progress of knowledge.").

Recognizing the "hot news" misappropriation tort in this case is not compatible with the constitutional principles enunciated in *Feist*. The Copyright Clause leaves facts in the public domain for all to use freely, precluding any claim of a property right in those facts. *See Feist*, 499 U.S. at 349 (it is a "constitutional requirement" that a competitor "remains free to use the facts contained in another's publication to aid in preparing a competing work"); *id.* at 350 ("[R]aw facts may be copied at will. This result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art."). As such, the freedom to copy facts at will

13

is an essential component of "promot[ing] the Progress of Science and useful Arts."  U.S. Const,
art. I, § 8, cl. 8.

Although *Feist* expressly rejected "sweat of the brow" as a justification for protecting facts,
"hot news" misappropriation forbids use of factual information "that constitutes free riding on the
plaintiff's efforts."  *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997)
("*NBA*").  Thus, in this case, a "hot news" misappropriation tort would sidestep the Copyright
Clause by punishing the copying of facts to protect the gatherer's "efforts"—creating a tort based
on the very theory rejected in *Feist*—and this Court should not recognize it.

<b>2.      Public   Policy   Concerns   Justify   Rejecting   "Hot   News"
         Misappropriation</b>

In addition to the statutory reasons for rejecting "hot news" misappropriation, public policy
concerns also dictate that the Court decline to recognize this tort under D.C. law.

*First*, the tort, as alleged in this case, conflicts with the longstanding, widely employed,
and unchallenged industry practice for news outlets to report on stories that have been broken by
other organizations.  Cable and broadcast television news programs, as well as multitudes of other
news outlets, feature constant streams of news, with or without attribution to their original sources.
News reporting always has been a complex ecosystem, where one organization breaks the news,
and another subsequently reports on it—all to the benefit of the public.  The tort of "hot news"
misappropriation, however, would grant the original news source a temporary monopoly over such
facts—an outcome that is inconsistent with the strong public interest in receiving important, timely
news.  *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 29 n.17 (1978) (recognizing the First
Amendment "right of the public to receive such information and ideas as are published").

*Second*, recognition of the tort would chill the lawful dissemination of important news by
fostering uncertainty among news outlets as to how long they must "sit" on a story before they are

14

free of a potential "hot news" claim.  *See Bartnicki v. Vopper*, 532 U.S. 514, 534 n.22 (2001) (warning against "the 'timidity and self-censorship' which may result from allowing the media to be punished for publishing certain truthful information") (citation omitted).  A breaking news story may concern a threat to public health or security, but the tort of "hot news" misappropriation alleged in this case stifles the dissemination of such crucial facts—a particularly dangerous outcome in circumstances where the time-sensitive nature of the event is the precise reason why the facts should be widely disseminated as quickly as possible.

*Third*, even if a "hot news" misappropriation tort made sense at the time of *INS* in 1918 (when there were but two primary wire services in existence), it does not today.  The modern ubiquity of multiple news platforms renders "hot news" misappropriation an anachronism, aimed at muzzling media companies.  In a world of citizen journalists and commentators, online news organizations, and broadcasters who compete 24 hours a day, news can no longer be contained for any meaningful amount of time.  Because it would be impossible to craft and enforce a rule restricting the dissemination of readily accessible factual information, this Court should acknowledge that "hot news" misappropriation cannot be practically or fairly applied and should not be recognized under D.C. law.

**B.      The "Hot News" Misappropriation Claim Is Preempted By The Copyright Act**

Even if D.C. law were to recognize the tort of "hot news" misappropriation, Capitol Forum's claim would be preempted by the Copyright Act.  To determine whether a state-law claim is preempted by the Copyright Act, courts apply a two-pronged test.  *See Williams v. Curington*, 662 F. Supp. 2d 33, 40 (D.D.C. 2009).  A claim is preempted if:  (1) the claim seeks to vindicate legal or equitable rights that are equivalent to exclusive rights already protected by the Copyright Act; and (2) the work in question is of the type of works protected by the Copyright Act.  *Id.*  In the instant case, there can be no dispute that both elements are met:  the essence of Capitol Forum's

"hot news" misappropriation claim is that Bloomberg is purportedly copying and distributing Capitol Forum's copyrightable content.  Compl. ¶¶ 39, 56.

Where both prongs of the preemption test are satisfied, courts apply the so-called "extra element test" to determine whether the claim should nonetheless survive preemption.  *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 73 (D.D.C. 2000) ("To gauge Kitchen Exhaust's unfair-competition claim, the court applies the 'extra element' test . . . .To survive preemption, Kitchen Exhaust's unfair-competition claim must qualitatively require at least one element in addition to those needed to make out a Copyright Act claim"); *see also Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 53 (D.D.C. 1999), *aff'd sub nom. Whitehead v. Paramount Picture Corp.*, 2000 WL 33363291 (D.C. Cir. Apr. 19, 2000) ("allegation that defendants improperly distributed and disseminated [plaintiff's] work clearly is preempted by the Copyright Act, since unauthorized distribution of a copyrighted work is explicitly covered by the Copyright Act").  Courts have consistently held that misappropriation claims grounded in acts of copying are preempted by the Copyright Act.  *See*, *e.g.*, *Fly*, 650 F. 3d at 891–907 ("hot news" claim preempted by the Copyright Act); *NBA*, 105 F.3d at 852 (2d Cir. 1997) (same); *Fox News Network LLC v. TVEyes,* 43 F. Supp. 3d 379, 399 (S.D.N.Y. 2014) (same); *see also* 17 U.S.C. § 301 ("all legal or equitable rights that are equivalent to any of the exclusive rights" of the Copyright Act "are governed exclusively by" the Copyright Act).

Capitol Forum's "hot news" misappropriation claim is undeniably based upon acts of alleged copying and is, therefore, preempted by the Copyright Act.  Capitol Forum alleges that Bloomberg "cop[ied] and distribut[ed] the content of Capitol Forum's reports via its 'First Word' news alerts."  Compl. ¶ 56.  This claim is qualitatively equivalent to Capitol Forum's claim for copyright infringement, as it requires no additional element beyond the allegation of unauthorized

copying of Capitol Forum's works, and is thus subject to preemption. In similar circumstances, courts have held a "hot news" misappropriation claim preempted by § 301 of the Copyright Act. *See, e.g.*, *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (dismissing a state-law misappropriation claim as preempted by the Copyright Act where the plaintiff "simply attempted to dress up its claim that [the defendant] had copied [plaintiff's work]"); *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 982 F.2d, 693, 717 (2d Cir. 1992) ("[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by Section 301 [of the Copyright Act]."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 919 (2d Cir. 1980) ("To the extent that Tomy's unfair competition claim seeks protection against Durham's copying," it is preempted.). Thus, Capitol Forum's "hot news" misappropriation claim is preempted by the Copyright Act and must be dismissed.

## C. Even If Not Preempted, The "Hot News" Misappropriation Claim Fails To Allege All The Elements Of The Tort

Even if D.C. law were to recognize a "hot news" misappropriation tort, and even if Capitol Forum's "hot news" misappropriation claim were not preempted by the Copyright Act, the Complaint fails to allege the facts necessary to state a claim for "hot news" misappropriation, assuming *arguendo* that D.C. law were to recognize the tort with the same elements that are required under New York law.

The two seminal cases addressing "hot news" misappropriation under New York law are *NBA* (2d Cir. 1997) and *Fly* (2d Cir. 2011). In both *Fly* and *NBA*, the Second Circuit recognized an extremely narrow exception to the rule that claims of misappropriation under New York law arising from the defendant's alleged copying of the plaintiff's materials are preempted by federal copyright law. *See Fly*, 650 F.3d at 896 ("The *NBA* panel repeatedly emphasized the 'narrowness' of the 'hot news' tort."); *NBA*, 105 F.3d at 852 ("[O]nly a narrow 'hot-news' misappropriation

claim survives preemption."). This narrow exception applies only to allegations of misappropriation that mirror the facts of *INS*. *See NBA*, 105 F.3d at 845 ("[I]t is generally agreed that a 'hot-news' *INS*-like claim survives preemption.") (citations omitted). As the Second Circuit explained, such an "*INS*-like" claim exists only where a defendant "free rides" on the efforts of a direct competitor by (1) taking for its own use time-sensitive ***factual information***, (2) collected at the expense of the plaintiff, (3) thereby producing a ***directly*** competitive service in a timely manner and at a lower cost than the plaintiff, (4) that destroys the plaintiff's financial incentive to collect and report the information in the first instance. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430–31 (2d Cir. 2012) ("Hot news" misappropriation claims are not preempted under state law where the plaintiff demonstrates "time-sensitive factual information, free-riding by the defendant, and a threat to the very existence of the plaintiff's product."); *Fly*, 650 F.3d at 902–06; *NBA*, 105 F.3d at 853. Even accepting all of Capitol Forum's factual allegations as true, the Complaint does not state a claim for "hot news" misappropriation.

*First*, Capitol Forum has not identified any specific time-sensitive factual information (*i.e.*, the "hot news") that Bloomberg is alleged to have misappropriated. Similar to its conclusory approach to the copyright claims, the Complaint speaks only in generalities, alleging it provides "time-sensitive and in-depth reports to its subscribers" without identifying which ***particular*** time-sensitive facts were purportedly copied by Bloomberg. Compl. ¶¶ 2, 31, 55–56. Capitol Forum's skeletal allegations are insufficient to state a plausible claim for "hot news" misappropriation. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557). In addition, the Complaint does not identify—as it must—any specific time-sensitive factual

information that was distributed by Bloomberg to the public while it was still "hot." *See Fin. Info, Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 209 (2d Cir. 1986) (requiring allegation of "immediacy of distribution" to sustain a "hot news" claim). Rather, the Complaint merely and generally alleges that "the release of its reports will often affect the price of publicly traded stocks—and will do so in a matter of minutes." Compl. ¶ 2. This deficiency dooms Capitol Forum's "hot news" claim.

*Second*, Capitol Forum has not sufficiently pleaded that Bloomberg is "free-riding" on Capitol Forum's efforts as this element has been interpreted by *Fly* and *NBA*. "Free-riding" means "taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and . . . appropriating it and selling it as the [defendant's] own." *Fly,* 650 F.3d at 895. As Capitol Forum admits, Bloomberg credits Capitol Forum as the source of the facts it reports in the news alerts, and thus is not free-riding as that term applies to the "hot news" tort. Compl. ¶ 22 (Bloomberg "cites Capitol Forum as the source of its summaries and abstracts."). Thus, Bloomberg does not "sell[] [the reports] as the [defendant's] own" but rather attributes the facts to Capitol Forum. *Fly,* 650 F.3d at 895. Put another way, unlike *INS* or another hypothetical case finding "hot news" misappropriation, Bloomberg is not accused of copying Capitol Forum's works verbatim or failing to attribute Capitol Forum as the source of the news it reports.

More importantly, Bloomberg merely reports on the fact that Capitol Forum issued a report that is itself newsworthy—often because the report impacts stock prices. This, by definition, is not the same underlying news reported by Capitol Forum; it is a new fact and, therefore, cannot constitute free-riding. *See Fly*, 650 F.3d at 902 ("[Fly] is collecting, collating and disseminating factual information—the facts that the Firms and others in the securities business have made

recommendations with respect to the value of and the wisdom of purchasing or selling securities—and attributing that information to the source. The Firms are making news; Fly, despite the Firms' understandable desire to protect their business model, is breaking it.").

*Finally*, the Complaint does not allege that Bloomberg's First Word service threatens the very existence of Capitol Forum—nor could it. *NBA*, 105 F.3d at 853 (holding that an element of a "hot news" tort is "the threat to the very existence of the product or service provided by the plaintiff."). The Complaint, which merely alleges that Bloomberg's conduct "reduces the value of the reports to Capitol Forum's subscribers" and will "adversely affect Capitol Forum's willingness to continue to make substantial investments in generating and distributing such reports," Compl. ¶ 33, has no specific factual allegations about how or to what extent this purported harm occurs, including no allegation that Capitol Forum will cease to exist as a result of Bloomberg's reporting activities.

That the Complaint contains certain buzzwords and phrases, *e.g.*, "free-riding" and "competes directly," does not save it from dismissal. Conclusory allegations of "free-riding" and "direct competition" without sufficient factual allegations in support are not enough to state a claim in and of themselves. *See Iqbal*, 556 U.S. at 678; *see also Ochre LLC v. Rockwell Architecture, Planning & Design, P.C.*, 2013 WL 3606123, at *2 (2d Cir. July 16, 2013) (summary order) (dismissing claims that "contain[] only the sort of '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' that are insufficient to survive a motion to dismiss under Rule 12(b)(6)") (quoting *Iqbal*, 556 U.S. at 678); *Eyal R.D.*, 784 F. Supp. 2d at 448 (dismissing claim that "merely provided, in the most cursory way, 'a formulaic recitation of the elements of a cause of action,' which is patently insufficient to support a claim") (quoting *Iqbal*, 556 U.S. at 678). The required factual allegations necessary to give substance to these catch

phrases are not present in the Complaint, and the Court should, therefore, dismiss Capitol Forum's "hot news" misappropriation claim.

IV.     **EVEN IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER THE TORTIOUS INTERFERENCE CLAIM, THE CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6)**

A.     **<u>The Tortious Interference Claim Is Preempted By The Copyright Act</u>**

As discussed *supra* Point III.B, where both prongs of the preemption test are satisfied, the Court applies the "extra elements test" to determine whether a claim should survive preemption or whether it is essentially a copyright claim. *See Williams*, 662 F. Supp. 2d at 40. Courts applying this test find tortious interference with contract claims to be preempted where the claims do "not differ qualitatively from a copyright claim because both would rest on [ ] unauthorized copying." *Sturdza*, 281 F.3d at 1305 (citing *Harper & Row, Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds,* 471 U.S. 539 (1985)); *see also Miller v. Holtzbrinck Publishers, LLC*, 2008 WL 4891212, at *3 (S.D.N.Y. Nov. 11, 2008) (tortious interference claim that "seeks to protect and enforce [plaintiff's] exclusive rights to use and publish her literary work" preempted because "[a]ny rights that Plaintiff may have stem from the Copyright Act"); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996) ("it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted").

Capitol Forum's tortious interference claim does not satisfy the extra elements test and is thus preempted by the Copyright Act because it is premised upon alleged unauthorized copying. The Complaint alleges that Bloomberg's purported "copying and redistributing" of Capitol Forum's copyrighted reports "has induced third parties to breach their Subscription Agreements" by forwarding the reports to Bloomberg. Compl. ¶ 66. The claim and the facts alleged do not "differ qualitatively from a copyright claim" in any way and require no additional elements beyond

21

the alleged unauthorized copying.  *Sturdza*, 281 F.3d at 1305; *see also Kamakazi Music Corp. v. Robbins Music Corp.,* 522 F. Supp. 125, 127 (S.D.N.Y. 1981) (dismissing tortious interference claim based on same factual allegations as copyright infringement claims), *aff'd,* 684 F.2d 228 (2d Cir. 1982).   Moreover, the allegations about Bloomberg's supposed knowledge and intent do not change this analysis.  *See* Compl. ¶¶ 65, 67.  "The fact that a tortious interference claim contains additional elements of awareness and intentional interference, not part of the copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated."  *Am. Movie Classics Co.*, 922 F. Supp. at 932 (quoting *Harper & Row*, 723 F.2d at 201).   As such, Capitol Forum's tortious interference with contract claim is preempted by the Copyright Act and must be dismissed.

## B.     Even If Not Preempted, The Tortious Interference Claim Fails To Allege All The Elements Of The Tort

To plead tortious interference with contract, a plaintiff must allege: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional procurement of the contract's breach; and (4) resulting damages. *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038–39 (D.C. 2015); *see also Koker v. Aurora Loan Servicing, LLC*, 915 F. Supp. 2d 51, 65 (D.D.C. 2013) (Walton, J.).   The Complaint falls short of stating a claim.

The Complaint does not allege any facts supporting the claim that Bloomberg has knowledge of the terms of Capitol Forum's subscription agreement.  Instead, Capitol Forum asserts that Bloomberg "knew or should have known of the existence of such contractual restrictions" because such restrictions are "commonplace in the electronic news-distribution business," Bloomberg "has similar contractual restrictions in its subscription agreements," and "the Capitol

Forum publications received by Bloomberg contain explicit notice of these restrictions."  Compl. ¶ 35.  While Bloomberg may have received a copyright notice, *see* Compl. ¶ 16, this notice does not suggest that Capitol Forum and its subscribers also enter into a contractual agreement, and it provides no details about the terms of that purported contract, what exceptions or allowances may exist, or the application of fair use.  These vague, conclusory allegations are not sufficient to sustain a tortious interference claim.  *See Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 422–23 (D.D.C. 1988) ("While plaintiff does allege that it had a valid business relationship or expectancy in business with the Red Cross, its allegations that Abbott intentionally interfered, induced, or caused a breach or termination of this relationship or expectancy are too vague to withstand defendants' motions.").  Capitol Forum has not identified the provisions in the subscription agreement that Bloomberg is alleged to have known about and caused others to breach, much less pleaded facts about how Bloomberg purportedly obtained this knowledge.  The vague allegations in the Complaint are insufficient to plead the knowledge requirement.

Capitol Forum also has not alleged and cannot establish that Bloomberg had a specific purpose or motive to disrupt ongoing contractual relationships (as opposed to a purpose to obtain the Capitol Forum stories so that Bloomberg could report on them). Capitol Forum asserts boilerplate allegations that Bloomberg "induc[ed] and encourag[ed]" Capitol Forum subscribers to provide access to its content, Compl. ¶ 36, but it does not allege that Bloomberg's purpose in obtaining copies of the reports was to disrupt Capitol Report's relationship with its subscribers.  *See Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 29 (D.D.C. 2017) ("Said another way, 'motive or purpose to disrupt ongoing business relationships is required to establish liability, *not merely intent to interfere or knowledge that conduct will harm plaintiff's business dealings.*'") (emphasis added) (quoting *Marshall v. Allison*, 908 F. Supp. 2d 186, 202 (D.D.C. 2012), *aff'd,*

554 Fed. Appx. 20 (D.C. Cir. 2014).  To the contrary, the Complaint alleges that Bloomberg's intent was to gain access to the contents of the reports, not to disrupt or damage Capitol Forum's business or relationship with subscribers.  *See* Compl. ¶¶ 36, 61.  Thus, Capitol Forum fails to state a claim for tortious interference.

## **CONCLUSION**

For the foregoing reasons, Bloomberg respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.


Dated:  February 28, 2019
      Washington, D.C.

Respectfully submitted,


/s/ *Tara M. Lee*
Tara M. Lee (#MD17902)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Fax:  (202) 538-8100
taralee@quinnemanuel.com

Robert L. Raskopf (*pro hac vice* pending)
Jessica A. Rose (*pro hac vice* pending)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
robertraskopf@quinnemanuel.com
jessicarose@quinnemanuel.com

*Counsel for Defendants Bloomberg L.P.*
*and Bloomberg Finance L.P.*

24