## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DBW PARTNERS LLC | : | |
| d/b/a THE CAPITOL FORUM, | : | |
| | : | Civil Action No. 19-cv-00311-RBW |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BLOOMBERG, L.P. and | : | |
| BLOOMBERG FINANCE, L.P. | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## Table of Contents

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

III.  STANDARD OF REVIEW ................................................................................ 4

    A.  Rule 12(b)(1)............................................................................................... 4

    B.  Rule 12(b)(6)............................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.  The Court Has Subject-Matter Jurisdiction ............................................. 5

    B.  The Complaint States Valid Claims for Direct Copyright Infringement and Contributory Copyright Infringement................................................... 6

        1.  There is No Heightened Pleading Standard in Copyright Cases ............... 6

        2.  Bloomberg Has Fair Notice of the Direct Copyright Claims .................... 9

        3.  Bloomberg Has Fair Notice of the Contributory Copyright Claims......... 11

    C.  Capitol Forum's Publications Are Protected Under the Hot News Doctrine ....... 12

        1.  The Hot News Doctrine is Necessary to Prevent Free-Riding and Encourage High Quality Journalism........................................................... 14

        2.  Capitol Forum's Hot News Claim is Not Preempted............................... 17

        3.  Capitol Forum Has Properly Pleaded a Hot News Misappropriation Claim ...................................................................................................... 18

            i.  The Complaint Sufficiently Alleges the Copying of Time Sensitive Facts ....................................................................................... 19

            ii.  Free-Riding Exists Regardless of Attribution................................ 19

            iii.  Capitol Forum Acts as a News Organization in Acquiring and Reporting the Facts .................................................................... 21

iv.    Capitol Forum Need Not Plead that Bloomberg's Practices Will Put it Out of Business ................................................................. 22

V.    CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                          <u>Page</u>

*2910 Georgia Ave. LLC v. D.C.,*
    983 F. Supp. 2d 127 (D.D.C. 2013) ...................................................................5, 10

*Arista Records LLC v. Greubel,*
    453 F. Supp. 2d 961 (N.D. Tex. 2006) ................................................................6

*Associated Press v. All Headline News Corp.,*
    608 F. Supp. 2d 454 (S.D.N.Y. 2009)..............................................................17, 22

*BanxCorp v. Costco Wholesale Corp.,*
    723 F. Supp. 2d 596 (S.D.N.Y. 2010)..............................................................17

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.,*
    650 F.3d 876 (2d Cir. 2011)...........................................................................passim

*Bitetto v. Rometty,*
    No. 117-cv-658, 2018 WL 941736 (N.D.N.Y. Feb. 16, 2018)...........................................8

*Broughel v. Battery Conservancy,*
    No. 07-cv-7755, 2009 WL 928280 (S.D.N.Y. Mar. 30, 2009)...........................................8

*Brown v. Earthboard Sports USA, Inc.,*
    481 F.3d 901 (6th Cir. 2007) .........................................................................19

*CoStar Realty Info., Inc. v. Field,*
    612 F. Supp. 2d 660 (D. Md. 2009) ...................................................................6

*Carter v. Pallante,*
    256 F. Supp. 3d 791 (N.D. Ill. 2017) .................................................................7

*Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar.*
    *Officers,* 75 F. Supp. 3d 294 (D.D.C. 2014) .........................................................10

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.,*
    No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014), *report and*
    *recommendation adopted*, No. 14-cv-131, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014)......16

*Facebook, Inc. v. Power Ventures, Inc.,*
    No. 08-cv-5780, 2009 WL 1299698 (N.D. Cal. May 11, 2009).........................................7

*Famolare, Inc. v. Melville Corp.,*
    472 F.Supp. 738 (D.Haw. 1979) .....................................................................17

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ..................................................................................5, 18

*Ford Motor Co. v. Autel US Inc.,*
    No. 14-cv-13760, 2015 WL 5729067 (E.D. Mich. Sept. 30, 2015) ....................................8

*Fox News Network, LLC v. TVEyes, Inc.,*
    43 F. Supp. 3d 379 (S.D.N.Y. 2014) .................................................................13, 23

*GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,*
    27 Md. App. 172 (Md. Ct. Spec. App. 1975) .......................................................18, 20

*Gill v. D.C.,*
    872 F. Supp. 2d 30 (D.D.C. 2012) ....................................................................4, 7

*Houchins v. KQED, Inc.,*
    438 U.S. 1 (1978) ..................................................................................15

*Ibrahim v. Titan Corp.,*
    391 F. Supp. 2d 10 (D.D.C. 2005) ....................................................................19

*Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc.,*
    443 F. Supp. 291 (S.D.N.Y. 1977) ..................................................................20

*Intercom Ventures, LLC v. FasTV, Inc.,*
    No. 13-cv-232, 2013 WL 2357621 (N.D. Ill. May 28, 2013) ..............................................6

*Int'l News Serv. v. Associated Press,*
    248 U.S. 215 (1918) ..........................................................................13, 19, 20

*Klein & Heuchan, Inc. v. Costar Realty Info., Inc.,*
    No. 8:08-cv-1227, 2009 WL 963130 (M.D. Fla. Apr. 8, 2009) ...........................................6

*LTM Int'l, Inc. v. Brown,*
    No. 04-cv-61716, 2005 WL 1279043 (S.D. Fla. Apr. 15, 2005) ..........................................7

*Lupian v. Joseph Cory Holdings LLC,*
    905 F.3d 127 (3d Cir. 2018) ........................................................................18

*McDonald v. K-2 Indus., Inc.,*
    108 F. Supp. 3d 135 (W.D.N.Y. 2015) ..................................................................6

*Mead v. Lindlaw,*
    839 F. Supp. 2d 66 (D.D.C. 2012) ...................................................................5, 10

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)................................................................................passim

*New England Tel. & Tel. Co. v. National Merchandising Corp.*,
    141 N.E.2d 702 (Mass. 1957) ...........................................................................17

*Newborn v. Yahoo!, Inc.*,
    391 F. Supp. 2d 181 (D.D.C. 2005) ..............................................................4, 5, 8

*Pfeffer v. Empire Stat, Inc.*,
    No. 03-cv-1404, 2006 WL 3096027 (S.D.N.Y. Nov. 1, 2006)...........................7

*Potter v. Toei Animation Inc.*,
    839 F. Supp. 2d 49 (D.D.C. 2012), *aff'd*, No. 12-cv-5084, 2012 WL 3055990 (D.C. Cir.
    July 18, 2012)................................................................................................8

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
    No. 09-cv-05659, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011)...........................8

*Ross v. Apple, Inc.*,
    No. 16-cv-61471, 2016 WL 8808769 (S.D. Fla. Dec. 30, 2016)........................8

*Tin Pan Apple v. Miller Brewing Co.*,
    737 F.Supp. 826 (S.D.N.Y. 1990) ....................................................................7

*X17, Inc. v. Lavandeira*,
    563 F. Supp. 2d 1102 (C.D. Cal. 2007) ...........................................................17

**Rules:**

Fed. R. Civ. P. 8(a)(2)...........................................................................................2, 6, 7, 8

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 4, 5

Fed. R. Civ. P. 12(b)(6).........................................................................................4, 5

Fed. R. Civ. P. 41(a)(1)(A) ...................................................................................2

**Other Sources:**

Lindsay G. Rabicoff,
    Comment, *The Hot News Misappropriation Doctrine: Confusion in the Internet Age and
    the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012) ...........................14

Edmund J. Sease,
    *Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?*, 70 N.D. L.
    Rev. 781, 801 (1994) ............................................................................................................15

DBW Partners LLC, doing business as The Capitol Forum ("Capitol Forum"), respectfully files this brief in opposition to the motion to dismiss the complaint filed by defendants Bloomberg L.P. and Bloomberg Finance L.P. (collectively "Bloomberg").

## I.   INTRODUCTION

As a preliminary matter, it is important to note that this case is hardly an attempt to use the copyright laws to chill "legitimate news reporting" as Bloomberg asserts in its brief.  Doc. 10-1 at 1.  Nor does this case challenge "reporting practices that are both in the public interest and essential to a functioning free press."  *Id.*  To the contrary, Capitol Forum merely seeks to protect its legitimate, and long-recognized, interest in its proprietary material—and to recover for Bloomberg's repeated copyright violations and free-riding practices.

Ironically, these are the very rights that Bloomberg itself seeks to protect.  As noted in the complaint, Bloomberg's own website warns its readers that the summarization and copying of its articles is a copyright violation.  *See* Doc. 1 ¶¶ 27, 46.  And in a recent complaint filed in the Southern District of New York, Bloomberg itself is suing to prevent any non-subscribers of its publications from receiving "the benefit of Bloomberg's labor and expertise without obtaining the necessary data license or paying Bloomberg the requisite fee."[1]  Rhetoric and overstatement aside, "legitimate news reporting" can exist without violating a competitor's rights in its proprietary material.

Bloomberg also overstates the necessary pleading requirements.  Regarding the jurisdictional issue, it is sufficient for a plaintiff simply to assert that it is the owner of a copyright registration, as alleged in Paragraph 38 of the complaint.  Doc. 1 ¶ 38.  Moreover, because matters outside the pleadings can be considered in a Rule 12(b)(1) motion, Capitol

---

[1] *See Bloomberg Finance L.P. v. UBS AG,* No. 1:18-cv-06334 (S.D.N.Y. 2018) (Doc. 1 ¶ 8).

Forum is attaching its copyright registrations to this Opposition—so that there can be no question regarding the existence of federal jurisdiction.

Similarly, there is no requirement to specify the precise content of Capitol Forum's articles or the specific infringing Bloomberg works.  There is no heightened pleading standard in copyright infringement cases: all that is required under Rule 8 is a short and plain statement of the claim entitling Capitol Forum to relief.  Bloomberg clearly has fair notice of the copyright allegations in this lawsuit.  It knows every article that it has summarized and copied, and it knows every time a Capitol Forum article was illegally sent to it.

The tort of "hot news" misappropriation is also properly pleaded.  The elements of this claim, as enunciated in *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 852-53 (2d Cir. 1997) have been alleged with particularity.  While Bloomberg is correct that this doctrine is a narrow one, the facts giving rise to this free-riding cause of action fit perfectly within its narrow structure.  As the Second Circuit observed in its most recent decision on the doctrine, this type of misappropriation claim is appropriate in situations in which the plaintiffs "collect and disseminate" public facts and the defendants then "copy" those facts.  *See Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876, 905-06 (2d Cir. 2011).  That is precisely what occurred and what is pleaded in this case.

Finally, it does appear that Bloomberg is correct that the tortious interference claim is preempted by federal law.  Capitol Forum will be dismissing this cause of action under Fed. R. Civ. P. 41(a)(1)(A).

## II.      BACKGROUND

This is an action for direct and contributory copyright infringement, as well as misappropriation of proprietary information under the "hot news" doctrine, arising from

Bloomberg's illegal solicitation, receipt, and use of Capitol Forum's copyrighted and proprietary reports.[2]  Capitol Forum is an investigative news and legal analysis company that publishes a premium internet-based subscription service that provides its paid subscribers—and other authorized recipients—with time-sensitive, in-depth reports that cover matters relating to mergers and acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement.  Plaintiff's proprietary reports, which contain a copyright notice and disclosure that its contents may not be distributed or reproduced without Capitol Forum's permission, constitute a fundamental and competitively significant component of Capitol Forum's business.

Bloomberg is a direct competitor of Capitol Forum with its own subscription-based service providing business and regulatory news coverage to its subscribers.  Since 2016, Bloomberg has been impermissibly soliciting Capitol Forum's proprietary reports from Capitol Forum's subscribers, and then copying the most creative and original aspects of the reports, which include Capitol Forum's analysis of a particular matter.  Bloomberg then publishes its own summary of the report in the form of a "news alert," which is distributed to Bloomberg's subscribers on its "First Word" news service.  These Bloomberg "news alerts" are usually published the same day as the corresponding Capitol Forum report, permitting Bloomberg to free-ride on Plaintiff's efforts and divert business opportunities from Capitol Forum.

With respect to the contributory infringement claim, as Capitol Forum has alleged, one of Bloomberg's employees, Joshua Fineman, has solicited and encouraged Capitol Forum's subscribers to illegally send him Capitol Forum's copyrighted reports, often in exchange for providing those subscribers with other types of market information.  Doc. 1 ¶ 28.  In December,

---

[2] As noted above, Plaintiff will voluntarily dismiss the cause of action for tortious interference with contractual relationships.

2017, Capitol Forum discovered that one of its subscribers, a West Coast hedge fund, was providing Mr. Fineman with its copyrighted reports. When confronted, this subscriber apologized, and then told Mr. Fineman that it would no longer agree to trade information with him. Mr. Fineman acknowledged their actions were illegal, yet continued to solicit copyrighted reports from other Capitol Forum subscribers. *Id.*

## III.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "this Court must accept as true all the factual allegations contained in the complaint." *Newborn v. Yahoo!, Inc.,* 391 F. Supp. 2d 181, 185 (D.D.C. 2005). "Additionally, in deciding a Rule 12(b)(1) motion, it is well-established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Id.*

### B.  Rule 12(b)(6)

A court considering a Rule 12(b)(6) motion to dismiss must presume "the factual allegations of the complaint to be true and construe[] them liberally in the plaintiff's favor." *Gill v. D.C.,* 872 F. Supp. 2d 30, 33 (D.D.C. 2012). "It is not necessary for the plaintiff to plead all elements of [its] prima facie case in the complaint, or to plead law or match facts to every element of a legal theory[,] [but it] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,] [meaning that] the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 33-34 (internal quotation and citations omitted).

Moreover, "in deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or *documents upon which the plaintiff's complaint necessarily relies." Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012) (emphasis added) (internal citations and quotations omitted); *2910 Georgia Ave. LLC v. D.C.,* 983 F. Supp. 2d 127, 134 (D.D.C. 2013) (same).

## IV.    ARGUMENT

### A.  This Court Has Subject-Matter Jurisdiction

According to Bloomberg, the complaint must be dismissed because it fails to allege that Capitol Forum "applied for or obtained" copyright registrations.  Doc. 10-1 at 6.  But those are hardly the magic words necessary to avoid dismissal—rather, all that is required is a statement that the plaintiff is the owner of a valid copyright and that the defendant infringed the copyright. As the Supreme Court held in *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* to prevail on a copyright claim, the plaintiff must establish "ownership" of a valid copyright and a violation of those rights.  499 U.S. 340, 361 (1991).  In Paragraphs 38 and 39 of the complaint, Capitol Forum alleges that it "owns a valid copyright" and that Defendants have infringed that copyright. Doc. 1 ¶¶ 38, 39.  Nothing more is needed.

Nor should there be any mystery as to whether Capitol Forum has registered its copyrights.  These registrations are a matter of public record and the ones in Capitol Forum's possession are attached as Exhibit 1.[3]

---

[3]As this Court noted in *Newborn,* in determining whether federal jurisdiction exists in ruling upon a Rule 12(b)(1) motion, it is appropriate to consider material outside of the pleadings.  391 F. Supp. 2d at 185.

**B.  The Complaint States Valid Claims for Direct Copyright Infringement and Contributory Infringement**

### 1.  There is No Heightened Pleading Standard in Copyright Cases

Bloomberg is also mistaken in its assertion that the copyright claims must be dismissed because Capitol Forum did not identify "the specific works subject to the copyright claim," Doc. 10-1 at 9, or the specific infringing works of the defendant.  Doc. 10-1 at 10.

There is no heightened pleading standard in copyright cases, and notice pleading is clearly sufficient under Rule 8 of the Federal Rules of Civil Procedure.  *See McDonald v. K-2 Indus., Inc.,* 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015) (stating that "[t]here is no heightened pleading requirement applied to copyright infringement claims; a claim of copyright infringement need only meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."); *Intercom Ventures, LLC v. FasTV, Inc.,* No. 13-cv-232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (stating that "claims for copyright infringement must satisfy the pleading requirements under Rule 8 and need not be pleaded with heightened specificity."); *CoStar Realty Info., Inc. v. Field,* 612 F. Supp. 2d 660, 674 (D. Md. 2009) (stating that "[t]here is no heightened pleading standard for copyright infringement."); *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.,* No. 8:08-cv-1227, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009) (stating that "[c]opyright infringement does not require a heightened standard of pleading[.]"); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 964–65 (N.D. Tex. 2006) (rejecting a heightened pleading standard in cases of alleged copyright infringement and noting that copyright infringement claims "must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8").

Accordingly, to state a claim for copyright infringement, Capitol Forum need only set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), giving the defendant fair

notice of the claim and the grounds upon which it rests.  *See Gill,* 872 F. Supp. 2d at 33.  Capitol Forum's complaint satisfies the notice pleading standard of Rule 8, as explained in Sections B(2) and (3) below.

The law is also clear that, contrary to Bloomberg's assertions, a plaintiff at this stage of the proceedings "need not allege the exact content that Defendants are suspected of copying." *Facebook, Inc. v. Power Ventures, Inc.,* No. 08-cv-5780, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (denying motion to dismiss copyright infringement claim); *Carter v. Pallante*, 256 F. Supp. 3d 791, 798-99 (N.D. Ill. 2017) (motion to dismiss denied where plaintiff alleged that defendants possessed the copyrighted songs at issue and licensed them to third parties after he had reclaimed their rights, despite not stating who the third parties were, which songs specifically were licensed, or when the licenses were sold.); *Pfeffer v. Empire Stat, Inc.,* No. 03-cv-1404, 2006 WL 3096027, at *3 (S.D.N.Y. Nov. 1, 2006) (denying motion to dismiss copyright infringement claim and rejecting argument that plaintiff was required to allege "what, if anything, [was] specifically original" in the copyrighted work.); *LTM Int'l, Inc. v. Brown*, No. 04-cv-61716, 2005 WL 1279043, at *1 (S.D. Fla. Apr. 15, 2005) (denying motion to dismiss and stating that "a plaintiff is not required to assert exactly which individual elements of the copyrighted works were infringed."); *Tin Pan Apple v. Miller Brewing Co.,* 737 F.Supp. 826, 828 (S.D.N.Y. 1990) (denying motion to dismiss where complaint alleged that defendants copied "one or more" of plaintiff's copyrighted works and finding that "the precise meaning of 'one or more' may be explored in discovery").

Finally, the cases cited by Bloomberg to support its assertion that Capitol Forum's complaint is not sufficiently detailed are inapposite.  *See* Doc 10-1 at 9-11.  In each of those cases, the complaints were so general, and confused, that the court found that the defendants did

not have fair notice of the plaintiff's claim. *See, e.g., Potter v. Toei Animation Inc.,* 839 F. Supp. 2d 49, 51, 53 (D.D.C. 2012), *aff'd*, No. 12-cv-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012) (noting that the complaint was "largely incomprehensible" and that plaintiff "never [came] close" to pleading the elements of the copyright and trademark infringement claims.); *Newborn*, 391 F. Supp. 2d at 187 (finding that the complaint was "riddled with vague, confusing, and contradictory statements making deciphering the basis for the plaintiff's Copyright Act claim a hopeless endeavor."); *Bitetto v. Rometty*, No. 117-cv-658, 2018 WL 941736, at *1, 2 (N.D.N.Y. Feb. 16, 2018) (finding that many of the facts that formed the basis of the action were "not entirely clear" and that the complaint did not provide *any* factual detail to suggest how defendant violated plaintiff's copyright.); *Broughel v. Battery Conservancy*, No. 07-cv-7755, 2009 WL 928280, at *4, 5 (S.D.N.Y. Mar. 30, 2009) (finding that plaintiff did not comply with Rule 8 pleading requirements because plaintiff only alleged a specific infringing act with respect to one defendant, and not the others, and that in any event plaintiff did not allege that her specific copyrighted images were actually copied.); *Ross v. Apple, Inc.,* No. 16-cv-61471, 2016 WL 8808769, at *4 (S.D. Fla. Dec. 30, 2016) (finding that the allegations were too general, leaving "the Complaint bereft of detail sufficient to afford [defendant] the opportunity to draft a meaningful responsive pleading."); *Ford Motor Co. v. Autel US Inc.,* No. 14-cv-13760, 2015 WL 5729067, at *5 (E.D. Mich. Sept. 30, 2015) (where complaint only claimed that the data file was duplicated, but it was unclear whether plaintiff alleged that defendant copied the "selection, coordination, and arrangement of that data," which is what was protected); *Richtek Tech. Corp. v. UPI Semiconductor Corp.,* No. 09-cv-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (finding plaintiff's argument that defendant was on notice of its copyright infringement

contentions "laughable" where the complaint did not even identify a category of works or acts that had been infringed).

Unlike the confused and ambiguous nature of the pleadings in the cases it relies upon, Bloomberg has more than fair and adequate notice of the claims brought by Capitol Forum.

### 2. Bloomberg Has Fair Notice of the Direct Copyright Claims

Capitol Forum's complaint lays out its direct copyright claims in significant detail. It alleges that one of Bloomberg's employees, Joshua Fineman, surreptitiously receives Capitol Forum's original copyrighted reports from one or more of Capitol Forum's subscribers. He then summarizes the reports, provides quotations from those reports, and disseminates them to Bloomberg subscribers through Bloomberg's proprietary "First Word" service. Further, Mr. Fineman provides no added value to the Capitol Forum material. All he does is to top off his articles with a stock quote on the particular company that is the subject of the Capitol Forum report. *See* Doc. 1 ¶¶ 22, 28.

The complaint also makes clear the type of material that Capitol Forum is seeking to protect in this litigation. Given that the fair use doctrine extends only to facts, and not analyses, the complaint specifically alleges that Capitol Forum's direct copyright claim encompasses only the Capitol Forum *analyses* that are subsequently copied and disseminated by Bloomberg within hours, if not minutes, of receiving the Capitol Forum material. Doc. 1 ¶¶ 4, 40.

By way of example, on August 22, 2017, at 11:00 a.m. (Eastern), Capitol Forum published a report on the recently announced acquisition of NxStage Medical, Inc. by Fresinus Medical Care. Both companies market hemodialysis machines. After analyzing the competitive positions of the companies, Capitol Forum concluded and reported that Fresinus occupied a "*dominant in-clinic*" position in that market, and that in view of the fact that there was no "*clear*

9

*fix*," the proposed deal "*faces at least moderate antitrust risk.*"  *See* Exhibit 2 (Capitol Forum report).

Thirty-six minutes later, at 11:36 a.m., Bloomberg provided a summary of the Capitol Forum article to its (paying) subscribers on its First Word service.  Bloomberg reported that the deal "*faces at least moderate antitrust risk*" due to the lack of '*clear fix*'…"   Bloomberg also reported on Fresnius' "*dominant in clinic*" position.  *See* Exhibit 3 (Bloomberg's summary).  As the complaint alleges, at Paragraph 40, by this type of conduct "Bloomberg has appropriated the most creative, original and significant portions of the reports and analyses."  Doc. 1 ¶ 40.

Capitol Forum's analyses of the market for hemodialysis machines, the competitive positions of the companies, and the prospects for antitrust approval are protected under the copyright laws, and the complaint states a claim upon which relief can be granted.  Bloomberg cannot complain that it does not have fair notice of the claim.  In fact, upon receiving the complaint, Bloomberg's Editor in Chief, John Micklethwait, issued a press release stating that this case "challenges routine newsgathering practices…"  *See* Exhibit 4 (press release).  There is no question that Bloomberg understands the claims asserted against it, and the extent of its direct copyright violations.  And should Bloomberg have any questions on this point, the dates and titles of the Capitol Forum articles improperly copied by Bloomberg are set forth in Exhibit 5.[4]

---

[4] The Court may consider documents outside the pleadings here because the Complaint references and necessarily relies upon them.  *See Mead*, 839 F. Supp. 2d at 70; *2910 Georgia Ave. LLC,* 983 F. Supp. 2d at 134; *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar. Officers*, 75 F. Supp. 3d 294, 306 (D.D.C. 2014) ("a plaintiff's complaint 'necessarily relies' on a document when the complaint . . . discuss[es a document] extensively.").

### 3. Bloomberg has Fair Notice of the Contributory Copyright Claims

Capitol Forum's complaint also lays out its contributory copyright claim in equally extensive detail.  It alleges that Bloomberg, through Joshua Fineman, has since 2016 affirmatively induced Capitol Forum subscribers to send him Capitol Forum's copyrighted reports.  Doc. 1 ¶ 28.  He does so by directly contacting the subscriber and requesting the articles.  As the complaint also alleges, Mr. Fineman has entered into arrangements with the Capitol Forum subscribers whereby he agrees to send them material they did not otherwise possess in exchange for the Capitol Forum reports.  *Id.*

The Capitol Forum report on the NxStage/Fresinus transaction (Exhibit 2), discussed above, provides a good example of this conduct.  At 11:17 a.m., seventeen minutes after the Capitol Forum analysis was released, one of Capitol Forum's subscribers forwarded that report to Joshua Fineman at Bloomberg.  *See* Exhibit 6.[5]  As the complaint alleges, he did so at Mr. Fineman's request and in exchange for receiving information from Mr. Fineman.  Doc. 1 ¶ 28.  Mr. Fineman received the Capitol Forum report, and at 11:18 a.m. responded with the simple message "TKS."  *See* Exhibit 6.  Eight minutes later, at 11:36 a.m., Bloomberg published its report on the NxStage/Fresinus merger, incorporating Capitol Forum's analysis of the proposed transaction.  *See* Exhibit 3.

As the complaint alleges, by inducing and encouraging direct copyright infringement by one or more Capitol Forum subscribers, Bloomberg has engaged in the contributory infringement of Capitol Forum's copyrighted works.  And again, Bloomberg has fair notice of Capitol Forum's contributory copyright claim, particularly given Mr. Micklethwait's statement regarding the evidently "routine" nature of this newsgathering technique.  *See* Exhibit 4.

---

[5] Exhibit 6 has been redacted to remove the email address of the subscriber at his request.  An unredacted copy will be provided when a protective order is entered in this case.

Unlike the inventory of publications implicated in its direct infringement claim, Capitol

Forum is not aware of all of the publications implicated in its contributory infringement claim.

The contributory copyright claim addresses the act of soliciting and receiving copyrighted works

from direct infringers, and does not depend upon whether Bloomberg took the next step of

copying those publications.  Bloomberg is certainly liable for inducing the transmission of the

Capitol Forum publications listed in Exhibit 5, but we expect the number of contributory

copyright violations is significantly greater than those reflected in Exhibit 5.  This, obviously,

will be a focus of discovery.

### C.  Capitol Forum's Publications are Protected under the Hot News Doctrine

The "hot news doctrine" is a common law tort that exists to prevent free-riding in the

news industry.  It provides a limited exception, and for a limited period of time, to protect certain

"facts" that would not otherwise be entitled to copyright protection.   This doctrine recognizes

that when time-sensitive information is generated at considerable time and expense, it would be

unfair to permit competitors to copy that work and thus misappropriate the profit potential of that

work.  These free-riding situations qualify for protection and are not preempted if the following

conditions are met: (1) the information is created at considerable cost or expense; (2) the value in

the information is time sensitive; (3) the conduct of the defendant constitutes free-riding; (4) the

parties are in direct competition; and (5) the ability to free-ride on the back of its direct

competitor would threaten or reduce the plaintiff's incentive to continue its level of investigation

and reporting.  These elements were spelled out in the Second Circuit's 1997 *NBA* case.[6]

The "hot news" doctrine was revisited in 2011 in the *Barclays* case.[7]  There, the court

held that the particular claim presented in that case was preempted by federal law.  Preemption

---

[6]*Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841 (2d Cir. 1997).
[7] *Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876 (2d Cir. 2011).

was found because the parties were not direct competitors and the conduct of the defendants did not constitute "free riding." As the court observed, the plaintiffs were not involved in the process of acquiring and developing news stories "through efforts akin to reporting." *Id.* at 903. They were not news organizations; they were investment banks issuing stock recommendations. Rather than *reporting* the news, the court held that they were actually *creating* the news themselves through their buy/sell recommendations.[8]

The situation presented in this case is markedly different. Here, Capitol Forum is a news organization. Here, Capitol Forum and Bloomberg are direct competitors. And here Bloomberg is free-riding on Capitol Forum's work. *Barclays* makes clear that the critical element of a "hot news" claim is the free-riding on the back of a competitor. *See also Fox News Network, LLC v. TVEyes, Inc.,* 43 F. Supp. 3d 379, 399 (S.D.N.Y. 2014) (hot news claim was preempted where defendant did not "free-ride" on the news services). The *Barclays* court specifically acknowledged that it was "mindful" of the Supreme Court's concern in *Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918) regarding: "*news, data, and the like, gathered and disseminated by one organization as a significant portion of its business, taken by another entity and published as the latter's own in competition with the former.*" 650 F.3d at 905 (emphasis added). Echoing this rationale, the *Barclays* court then laid out the type of situation in which the "hot news" doctrine applies: if the plaintiff were to collect and disseminate facts it generated itself and the defendant were to copy those facts.

---

[8] Bloomberg tries to wedge this case into the *Barclays* facts by arguing that, just like the bank recommendations in *Barclays*, Capitol Forum releases (all of them) are "newsworthy financial events" in and of themselves. Doc. 10-1 at 1. While Capitol Forum appreciates the compliment, the analogy is inapt. First, unlike the relationship between the Barclays bank and the Flyonthewall reporting service, Capitol Forum is a news organization, and stands in direct competition to Bloomberg. Second, the analogy proves too much. Were this the case, no news organization could ever seek to recover under the "hot news" doctrine, yet the *Barclays'* court makes clear that the doctrine acts to protect those who "acquire [the news] through efforts akin to reporting." 650 F.3d at 903.

This is free-riding—and this is precisely the situation presented here.  Capitol Forum devotes considerable time to developing the news it reports.  Its investigations are extensively researched and vetted.  Many of its reports take months to prepare.  Yet Bloomberg, comfortable in its "routine newsgathering practices," just sits back, makes arrangements with a few Capitol Forum subscribers to receive the reports, and then repackages the information and sends it out to its (paying) subscribers.

1. **The Hot News Doctrine Is Necessary to Prevent Free-Riding and Encourage High Quality Journalism**

For the reasons discussed above, the hot news doctrine serves an important function in the news industry.  This doctrine, limited in time and scope, is necessary to ensure that larger and more established news organizations are restricted in the use they can make of the reporting efforts undertaken by more recent market entrants, such as Capitol Forum.  Without some degree of protection, organizations like Bloomberg would be free to profit from the work of less established news companies, and the incentives to produce first class journalism would be reduced—or eliminated.  Indeed, a recent journal article published by the ABA[9] called for federal legislation to codify this doctrine in cases (as here) where the information is the type essential to the plaintiff's business; provides a benefit to society; and would be unlikely to be generated without the incentive of protection for a limited period of time.  Chief among the author's concerns were the necessity to prevent free-riding and the need to provide an incentive to journalistic initiatives.

Bloomberg's "public policy" concerns to the contrary are overstated.  This case does not involve the type of news in which the general public has a strong interest.  This case does not concern "threat[s] to public health or security," as Bloomberg suggests.  Doc. 10-1 at 15.  Nor

---

[9] *See* Lindsay G. Rabicoff, Comment, *The Hot News Misappropriation Doctrine: Confusion in the Internet Age and the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012).

does this case concern national conflicts, or election results, or weather alerts—matters in which the public has "a right to receive such information and ideas as are published." *Houchins v. KQED, Inc.,* 438 U.S. 1, 29 n.17 (1978).  Rather, this case involves business news and financial transactions—the types of information that are likely important to the institutional investor, but not necessarily to the general public.  The institutional investors who subscribe to these news services understand that this information is generated at considerable cost—and are willing to pay significant subscription costs to receive it, which renders this information even more susceptible to free-riding and, as such, deserving of protection.  Moreover, with respect to Bloomberg's policy concern that the enforcement of the hot news doctrine would be unworkable and unenforceable in today's media "ecosystem," the simple answer is that the hot news doctrine only protects free-riding by *direct competitors.*  In any particular market sector, the number of competitive news organizations is limited in quantity, and can be readily monitored.

The fact that this tort has not been recognized to date in the District of Columbia is of no moment.  The lack of case law simply reflects the reality that the doctrine has never been litigated here.  As a practical matter, this tort is one that finds applicability and traction in matters involving financial markets and financial publications.  The parties involved in these endeavors are generally located in New York.  That is where these types of cases are more often litigated, and that is the jurisdiction "that has most heartily embraced the doctrine."  Edmund J. Sease, *Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?*, 70 N.D. L. Rev. 781, 801 (1994).  As such, the fact that Capitol Forum is based in the District of Columbia should not work to its disadvantage.  Founded in 2012, Capitol Forum is the first and only organization domiciled in the District of Columbia to establish a premium subscription based

financial news service—and it should be entitled to the same protections that its New York competitors receive.

The recent *Dow Jones & Co. v. Real-Time Analysis & News, Ltd.* case provides context to this point. No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014*), report and recommendation adopted*, No. 14-cv-131, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014). Dow Jones, publisher of the *Wall Street Journal* and other financial publications, operates a service known as "DJ Dominant" that provides real-time business news and analysis to financial professionals. This service is provided for a fee and Dow Jones does not authorize third parties to redistribute the content. However, the defendant in that case, Ransquawk, did just that: systematically reproducing and redistributing the news content published by Dow Jones. Dow Jones brought a "hot news" claim in New York against Ransquawk, alleging that this free-riding by one of its competitors was likely to undermine Dow Jones' economic incentive to invest in the costly process of reporting time-sensitive news. The New York court agreed, and found that this hot news misappropriation claim stated a valid claim for relief.

Capitol Forum stands in exactly the same position vis a vis Bloomberg that Dow Jones did with respect to Ransquack. Both Capitol Forum and Dow Jones have made significant investments in their investigation and reporting of financial developments. Both Bloomberg and Ransquawk are free-riding on this "costly process of reporting time-sensitive news." Furthermore, Capitol Forum also competes against Dow Jones in the reporting of financial news. It would seem markedly inequitable for Dow Jones, but not Capitol Forum, to receive the benefit of free-riding protections in its home jurisdiction.

Finally, this tort has been recognized in fourteen other jurisdictions, including New York, Missouri, Texas, Pennsylvania, California, Alaska, Colorado, Illinois, North Carolina,

South Carolina, Wisconsin, New Jersey, Maryland and Delaware.[10]  The only two jurisdictions

that failed to adopt the doctrine, Hawaii and Massachusetts, did so in cases involving much

different facts, matters having nothing to do with news reporting.[11]  The doctrine has particular

vitality in situations, as here, where one news organization copies the work of one of its

competitors.  As the courts and commentators appear to agree, these are the situations most

deserving of protection.

## 2.  Capitol Forum's Hot News Claim is Not Preempted

Bloomberg's preemption argument, at pages 15 through 17 of its brief appears to miss the

mark.  Doc. 10-1 at 15-17.  According to Bloomberg "courts have consistently held that

misappropriation claims grounded in acts of copying are preempted by the Copyright Act."  *Id.*

at 16.  From this Bloomberg asserts that because Capitol Forum is asserting a claim in which one

of the elements is copying, the claim is preempted in its entirety.  But clearly, not all copying

claims are preempted.  Indeed, the *Barclays* case specifically states that a hot news claim would

lie when the plaintiff would collect and disseminate the facts and the defendant would "copy the

facts."  650 F.3d at 906; *see also BanxCorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d 596, 614

(S.D.N.Y. 2010) (where copying was alleged, hot news claim was not preempted and, therefore,

the motion to dismiss that claim was denied); *Associated Press v. All Headline News Corp.,* 608

F. Supp. 2d 454, 461 (S.D.N.Y. 2009) (where allegations of unlawful copying of news stories

was alleged, the court held that the hot news claim was not preempted and denied motion to

dismiss); *X17, Inc. v. Lavandeira,* 563 F. Supp. 2d 1102, 1107, 1108-09 (C.D. Cal. 2007) (where

---

[10] 70 N.D. L. Rev. at 801-02.

[11] *See New England Tel. & Tel. Co. v. National Merchandising Corp.,* 141 N.E.2d 702 (Mass. 1957) (relating to the distribution of opaque plastic covers for telephone directories); *Famolare, Inc. v. Melville Corp.,* 472 F.Supp. 738 (D.Haw. 1979) (relating to the alleged copying of the wavy-bottom soles of plaintiff's shoes).

plaintiff alleged unlawful copying of celebrity photographs, the court found that the hot news claim was adequately pleaded and not preempted.).

Bloomberg also argues that the hot news doctrine cannot survive in the wake of *Feist, supra*. Doc. 10-1 at 11-14. But *Feist* did not overrule the hot news doctrine—and it came nowhere close to doing so. In fact, writing for the majority, Justice O'Connor noted the possibility of a "hot news" misappropriation remedy in that case: "The Court ultimately rendered judgment for Associated Press [in the *INS* case] on non-copyright grounds that are not relevant here." *Feist*, 499 U.S. at 354, fn. Further, *Feist* was decided in 1991, and virtually all of the significant hot news cases, including *NBA* and *Barclays*, were decided since then.

### 3. Capitol Forum Has Properly Pleaded a Hot News Misappropriation Claim

Bloomberg asserts that Capitol Forum has failed to properly plead a misappropriation claim. It cites four reasons: (1) Capitol Forum has not identified the time sensitive facts copied by Bloomberg; (2) Bloomberg cannot be accused of "free-riding" because it cites Capitol Forum in its articles; (3) Capitol Forum is not reporting on the news because it is "making the news;" and (4) Capitol Forum has not alleged that Bloomberg's practices will put it out of business.

Initially, it must be noted that these factors are not elements of Capitol Forum's misappropriation claim. If anything, they are elements of Bloomberg's preemption defense. Capitol Forum has asserted an unfair competition and misappropriation claim, the elements of which are: "(1) time, labor, and money spent in the creation of the thing misappropriated, (2) a competitive relationship between plaintiff and defendant and (3) commercial damage to the plaintiff." *GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,* 27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975). These elements are pleaded in the complaint.

The four issues raised above by Bloomberg are relevant only to its preemption defense. Because preemption is an affirmative defense, the burden is on Bloomberg to both plead and prove them. *See, e.g., Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) ("[p]reemption is an affirmative defense that the defendant has the burden to prove"); *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 912 (6th Cir. 2007) ("[f]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof."); *Ibrahim v. Titan Corp.,* 391 F. Supp. 2d 10, 17-18 (D.D.C. 2005) ("preemption . . . is an affirmative defense, with the burden of proof on the defendants").

Nevertheless, while these matters are clearly not the grist of a motion to dismiss, Capitol Forum will address each of them below.

### i. The complaint sufficiently alleges the copying of time sensitive facts

The time sensitive nature of the Capitol Forum publications is pleaded repeatedly in the complaint, including Paragraphs 2, 13, 32, and 55. *See* Doc. 1 ¶¶ 2, 13, 32, 55.  In particular, with respect to the hot news misappropriation claim, Capitol Forum alleges at paragraph 55 that "the newsworthy information that Capitol Forum gathers, analyzes and reports is valuable to many of its customers in large part because of its time sensitive nature." *Id.* ¶ 55.  Bloomberg certainly has fair notice that the Capitol Forum articles are time sensitive.  Why else would it copy and disseminate Capitol Forum's publications within minutes of receiving them?

### ii. Free-riding exists regardless of attribution

Bloomberg asserts that Capitol Forum has not sufficiently pleaded "free-riding" because Bloomberg doesn't sell the Capitol Forum reports as its own, but rather "credits" Capitol Forum as its source.  Doc. 10-1 at 19.  Bloomberg is incorrect in its assertion that a hot news claim must fail where attribution is made.

In *INS*, the Supreme Court specifically distinguished the defendant's failure to attribute its news content to AP as a separate issue from the hot news misappropriation.  248 U.S. at 242 ("*Besides the misappropriation*, there are elements of imitation, of false pretense, in defendant's practices [and] . . . the habitual failure to give credit to [AP]") (emphasis added).  Indeed, the Supreme Court was careful to note that the defendant's false pretenses and "habitual failure to give credit," "although accentuating the wrong, *are not the essence of it*." *Id.* (emphasis added.). Rather, the "essence" of a hot news claim focuses on "an unauthorized interference with the normal operation of a complainant's legitimate business [in time sensitive information] precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news." *Id.* at 240.

The Second Circuit in *NBA* described the heart of a hot news claim and recognized AP's property interest at stake:

> *INS* is not about ethics; it is about the protection of property rights in time-sensitive information so that the information will be made available to the public by profit seeking entrepreneurs. If services like AP were not assured of property rights in the news they pay to collect, they would cease to collect it. The ability of their competitors to appropriate their product at only nominal cost and thereby to disseminate a competing product at a lower price would destroy the incentive to collect news in the first place. The newspaper-reading public would suffer because no one would have an incentive to collect "hot news."

105 F.3d at 853.  The Second Circuit in *Barclays* did not disturb this key finding of *NBA*.

Moreover, the court's decision in *Barclays* turned not on a lack of "passing off" the plaintiffs' stock recommendations as Fly's own, but instead on the fact that Fly was not "free riding" in the *INS* sense; Bloomberg thus improperly equates "free riding" with failure of

attribution.  *See also GAI Audio of New York*, 27 Md. App. at 192 (Under Maryland law, the tort of unfair competition is limited neither to "passing off" one's own goods as a competitor's nor to "passing off" a competitor's goods as one's own.); *Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc.,* 443 F. Supp. 291, 305 (S.D.N.Y. 1977) (Under New York law, unfair competition is not limited to circumstances where one party attempted to "pass off" his goods as those of another, but "encompasses a broader range of unfair trade practices generally described as the misappropriation of the skill, expenditures and labors of another.").  Although its conclusion that Fly was not free riding on the Firms' stock recommendations did reference the fact that Fly was attributing the recommendations to the Firms, the Second Circuit's holding was based principally on its conclusion that Barclays and the other investments firms were "making" news in their stock recommendations, and Fly was just "breaking" it.  *See Barclays*, 650 F.3d at 902.

### iii.  Capitol Forum acts as a news organization in acquiring and reporting the facts

Bloomberg's third point is that Capitol Forum does not qualify for protection under the hot news doctrine because, like the plaintiff banks in the *Barclays* case, it is not reporting the news, but rather is "making the news."  Yet the difference between Capitol Forum and the Barclay banks is significant—and determinative on this point.  Unlike the banks, as Capitol Forum has pleaded, it is a news organization, and directly competes with Bloomberg.  Were Capitol Forum to be considered a newsmaker rather than a news reporter, no news organization could ever qualify for protection under this doctrine.  Finally, it goes without saying that the posture of Capitol Forum—news maker or news reporter—is a factual issue inappropriate for disposition on a motion to dismiss.

21

### iv. Capitol Forum need not plead that Bloomberg's practices will put it out of business

Bloomberg's final point is that Capitol Forum did not plead that Bloomberg's activities "threaten the very existence of Capitol Forum." Doc. 10-1 at 20. This assertion is evidently based upon a misinterpretation of the *NBA* case. The court in *NBA* described this last free-riding element in two different ways. In one passage, it stated that the inquiry depended on whether the defendant's free-riding would reduce the incentive to produce the product or service such that its existence or quality would be substantially threatened. *NBA*, 105 F.3d at 852. In another passage, the court stated that this element depended on whether the free-riding would be a threat to the very existence of the product or service provided by the plaintiff. *Id.* at 853.

The *Barclays* court noted the inconsistency and commented that the first iteration addressed the incentive to continue to provide quality publications, whereas the second iteration addressed whether the defendant's conduct removed any profit potential and would effectively cut off the plaintiff's business. While the *Barclays* court did not specifically resolve this inconsistency, its ensuing discussion did not embrace Bloomberg's view that a misappropriation claim can lie only if the continued viability of the plaintiff's business is threatened by the defendant's conduct. Indeed, it concluded a hot news claim would be appropriate in situations where the plaintiff collects and disseminates the facts and the defendant then copies those facts, regardless of any threat to the plaintiff's existence.

In any event, the cases decided in the wake of the *NBA* and *Barclays* decisions have consistently focused their inquiry on whether the quality of the plaintiff's publications would be threatened or reduced—and not on whether the plaintiff would be forced out of business. *See All Headline News Corp.,* 608 F. Supp. at 461 (denying motion to dismiss hot news claim where *NBA*'s five element test was set forth in the complaint, which includes showing "the ability of

22

other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened."); *Fox News*, 43 F. Supp. 3d at 398 (citing the five-part *NBA* test to prevail on a hot news claim, which includes showing "the ability of other parties to free-ride on efforts of plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.").

No case has ever held that the tort of hot news misappropriation is appropriate only if the defendant's conduct will force the plaintiff out of business. Moreover, any such requirement would make no economic sense, as it would permit the defendant to continue to free-ride and continue to harm the plaintiff, as long as the plaintiff were able to stay in business. The far better rule is to require a showing that the defendant's free-riding would threaten the plaintiff's incentive to continue its investigative reporting at the same level, and that is what Capitol Forum has pleaded in paragraph 56 of the complaint. Doc. 1 ¶ 56.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated:    Washington, DC
            March 14, 2019

Respectfully submitted,

By: _____

John B. Williams (DC Bar #257667)
Fara N. Kitton (DC Bar #1007793)
WILLIAMS LOPATTO PLLC
1200 New Hampshire Ave., NW, Ste. 750
Washington, DC  20036
Tel.: (202) 296-1611
jbwilliams@williamslopatto.com

Counsel for Plaintiff

23

## CERTIFICATE OF SERVICE

I hereby certify that on March 14th, 2019, a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was filed electronically with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which sent notification of such filing to Plaintiff's counsel of record:

Tara M. Lee, Esq. (taralee@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005

Robert L. Raskopf (robertraskopf@quinnemanuel.com)
Jessica A. Rose (jessicarose@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010

_____
John B. Williams