# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DBW PARTNERS, LLC d/b/a THE CAPITOL
 FORUM,

                    Plaintiff,

       v.

BLOOMBERG, L.P. and BLOOMBERG
 FINANCE, L.P.,

                Defendants.

Case No. 19-cv-00311-RBW

**DEFENDANTS BLOOMBERG L.P.'S and BLOOMBERG FINANCE L.P.'S**
**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................3

I.  CAPITOL FORUM'S COPYRIGHT INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ...............................................................................3

    A.  For Purposes Of Rule 12(b)(6), Ordinary Notice Pleading Under Rule 8 Requires A Copyright Infringement Plaintiff To Identify The Allegedly Infringed And Infringing Works ...............................................................3

    B.  Rule 12(b)(6) Does Not Allow Capitol Forum To Supply The Missing Allegations Through Its Opposition Brief And Exhibits Thereto .........................5

II.  CAPITOL FORUM'S "HOT NEWS" MISAPPROPRIATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE ..............................................................................9

    A.  Capitol Forum Cannot Satisfy The Elements Of The New York Tort That Could Potentially Survive Federal Preemption .....................................................10

    B.  The "Hot News" Tort Is Obsolete And Should Not Be Recognized Under District Of Columbia Law ....................................................................................14

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
    297 F. Supp. 2d 165 (D.D.C. 2003) .......................................................................... 5

*Arista Records LLC v. Greubel*,
    453 F. Supp. 2d 961 (N.D. Tex. 2006) ..................................................................... 4

*Associated Press v. All Headline News Corp.*,
    608 F. Supp. 2d 454 (S.D.N.Y. 2009) ..................................................................... 14

*Bailey v. Shell W. E&P, Inc.*,
    609 F.3d 710 (5th Cir. 2010) .................................................................................. 5

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*,
    650 F.3d 876 (2d Cir. 2011) ............................................................................. 1, 11

*Berthold Types Ltd. v. Adobe Sys. Inc.*,
    242 F.3d 772 (7th Cir. 2001) .................................................................................. 5

*Bitetto v. Rometty*,
    2018 WL 941736 (N.D.N.Y. Feb. 16, 2018) .......................................................... 3

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ............................................................................................ 8, 9

*Carter v. Pallante, 16-cv-06786, ECF*,
    1 at ¶¶ 55 (N.D. Ill. June 28, 2016) ...................................................................... 5

*CoStar Realty Info., Inc. v. Field*,
    612 F. Supp. 2d 660 (D. Md. 2009) ....................................................................... 4

*Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar.
    Officers*,
    75 F. Supp. 3d 294 (D.D.C. 2014) ..................................................................... 6, 14

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*,
    2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014), *report and recommendation adopted*,
    2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014) .......................................................... 13

*Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*,
    808 F.2d 204 (2d Cir. 1986) ................................................................................... 11

*Fulks v. Knowles-Carter*,
    207 F. Supp. 3d 274 (S.D.N.Y. 2016) ................................................................... 8

*GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.*,
   27 Md. App. 172 (Md. Ct. Spec. App. 1975) .......................................................... 9

*Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*,
   1994 WL 606171 (N.D. Ill. Oct. 24, 1994) ........................................................... 12

*GEICO v. Fetisoff*,
   958 F.2d 1137 (D.C. Cir. 1992) ........................................................................... 14

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   206 F. Supp. 3d 869 (S.D.N.Y. 2016) .................................................................... 7

*Hells Canyon Pres. Council v. United States Forest Serv.*,
   403 F.3d 683 (9th Cir. 2005) ................................................................................ 5

*Hilska v. Jones*,
   297 F. Supp. 2d 82 (D.D.C. 2003) .................................................................. 3, 13

*In re APA Assessment Fee Litig.*,
   766 F.3d 39 (D.C. Cir. 2014) ............................................................................... 14

*Int'l News Serv. v. Associated Press*,
   248 U.S. 215 (1918) ..................................................................................... 13, 14

*Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*,
   2009 WL 963130 (M.D. Fla. Apr. 8, 2009) ............................................................ 5

*Klein v. Am. Land Title Ass'n*,
   926 F. Supp. 2d 193 (D.D.C. 2013) ....................................................................... 5

*Lamphier v. Wash. Hosp. Ctr.*,
   524 A.2d 729 (D.C. 1987) .................................................................................. 14

*LTM Int'l, Inc. v. Brown*,
   2005 WL 1279043 (S.D. Fla. Apr. 15, 2005) .......................................................... 5

*Mahnke v. Munchkin Prod, Inc.*,
   2001 WL 637378 (S.D.N.Y. June 7, 2001) ............................................................ 4

*Middlebrooks v. Godwin Corp.*,
   722 F. Supp. 2d 82 (D.D.C. 2010), *aff'd*, 424 Fed.Appx. 10 (D.C. Cir. 2011) ........ 5

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ..................................................... 2, 10, 11, 12, 13

*Newborn v. Yahoo!, Inc.*,
   391 F. Supp. 2d 181 (D.D.C. 2005) .................................................................. 3, 4

*Nnadili v. Chevron U.S.A., Inc.*,
   435 F. Supp. 2d 93 (D.D.C. 2006) ........................................................................... 15

*Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.*,
   2013 WL 2357586 (N.D.Ill. May 29, 2013) .............................................................. 7

*Payne v. Courier-Journal*,
   2005 WL 1287434 (W.D. Ky. May 31, 2005) ........................................................... 8

*Payne v. The Courier-Journal*,
   193 F. App'x 397 (6th Cir. 2006) ............................................................................. 9

*Perry v. Schumacher Grp. of Louisiana*,
   891 F.3d 954 (11th Cir. 2018) ................................................................................. 5

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ....................................................................................... 8

*Pfeffer v. Empire Stat, Inc.*,
   2006 WL 3096027 (S.D.N.Y. Nov. 1, 2006) ............................................................ 5

*Rann v. Chao*,
   154 F. Supp. 2d 61 (D.D.C. 2001) ........................................................................... 3

*Righthaven LLC v. Realty One Grp., Inc.*,
    2010 WL 4115413 (D. Nev. Oct. 19, 2010) ............................................................ 8

*Ross v. Walton*,
   668 F. Supp. 2d 32 (D.D.C. 2009) ......................................................................... 12

*Scrappost, LLC v. Peony Online, Inc.*,
   2017 WL 697028 (E.D. Mich. Feb. 22, 2017) ......................................................... 9

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
   2009 WL 2157573 (N.D. Cal. July 17, 2009) .......................................................... 8

*Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*,
   769 F. Supp. 1161 (D. Colo. 1991) ......................................................................... 4

*Ste. Genevieve Media, LLC v. Pulitzer Missouri Newspapers, Inc.*,
   2016 WL 6083796 (E.D. Mo. Oct. 18, 2016) ......................................................... 10

*Tin Pan Apple, Inc. v. Miller Brewing Co.*,
   737 F. Supp. 826 (S.D.N.Y. 1990) .......................................................................... 5

*Tyson v. Brennan*,
   277 F. Supp. 3d 28 (D.D.C. 2017) ........................................................................... 6

*Vasser v. McDonald*,
   228 F.Supp.3d 1 (D.D.C. 2016) ........................................................................ 6

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
   2013 WL 4052024 (D. Colo. Aug. 12, 2013) .................................................... 7

*X17, Inc. v. Lavandeira*,
   563 F. Supp. 2d 1102 (C.D. Cal. 2007) .......................................................... 13

## **Rules and Regulations**

Fed. R. Civ. P. 8 ................................................................................................ 3, 4

Fed. R. Civ. P. 12 ....................................................................................... 3, 5, 8,10

Fed. R. Civ. P. 15 ................................................................................................. 5

Fed. R. Civ. P. 41 ................................................................................................. 5

## **Statutory Authorities**

17 U.S.C. § 102(b) ........................................................................................... 6, 7

17 U.S.C. § 107 .................................................................................................. 8

## **Additional Authorities**

Restatement (Second) of Conflict of Laws § 145 .............................................. 15

Restatement (Third) of Unfair Competition § 38 .............................................. 15

Richard A. Posner, *Misappropriation: A Dirge*, 40 Hous. L. Rev. 621 (2003) ............ 15

Charles A. Wright & Arthur R. Miller,
   *Federal Practice and Procedure*, § 2362 (3d ed. 1998) ................................. 5

Defendants Bloomberg L.P. and Bloomberg Finance L.P. (collectively, "Bloomberg") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint filed by Plaintiff DBW Partners, LLC d/b/a The Capitol Forum ("Capitol Forum").

## **INTRODUCTION**

Capitol Forum implicitly concedes that its Complaint is facially deficient. Rather than amend its Complaint as a matter of right, Capitol Forum instead attaches materials to its opposition brief in an attempt to mask its pleading failures, which is clearly improper. But even considering those attached materials, they do not save Capitol Forum's deficient pleadings.

*First*, Capitol Forum attaches one alleged instance of Bloomberg's copyright infringement. That example only demonstrates that the works are not substantially similar, the *sine qua non* of copyright infringement, and that Bloomberg has engaged in protected newsgathering and news reporting activity warranting dismissal. Further, because Capitol Forum has elected to proceed in this manner and forego amendment, putting forth what it presumably believes is its strongest example of infringement, the remaining claims should also be dismissed with prejudice.

*Second*, the opposition brief and the materials attached to it also do not cure Capitol Forum's "hot news" misappropriation claim. As set out in Bloomberg's opening brief, the tort is not recognized under D.C. law and, even under New York law, Capitol Forum has failed to adequately plead the extremely narrow type of claim that survives copyright preemption. In a leading case on this subject, the Second Circuit soundly rejected Capitol Forum's exact theory in this case on preemption grounds. *See, e.g., Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 898 (2d Cir. 2011). Even if Capitol Forum's claim survives preemption, this Court should dismiss the claim with prejudice because, among other reasons, Capitol Forum has failed to plead this essential element: "the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or

quality would be substantially threatened." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997) ("*NBA*"). Specifically, Capitol Forum has not pleaded—nor can it—that its own reporting activity is threatened by Bloomberg's later-in-time news articles. The Complaint and materials attached to the opposition show that any potential subscriber who wishes to obtain a market advantage from the information contained in a Capitol Forum report must obtain that information directly from Capitol Forum because the stock price will have already moved by the time Bloomberg's (or another news organization's) article is published. That audience is plainly sufficient to provide Capitol Forum an adequate "incentive to produce the product or service." *NBA*, 105 F.3d at 845.

Capitol Forum's argument that Bloomberg is a hypocrite is a red herring. For one thing, Bloomberg sued its own subscriber for breach of Bloomberg's licensing terms, an option that was presumably available to Capitol Forum in this case but that it has thus far chosen not to pursue. *See Bloomberg Finance L.P. v. UBS AG,* No. 1:18-cv-06334 (S.D.N.Y. 2018). And while Bloomberg cautions *its own subscribers* (as opposed to third parties) not to publish summaries of Bloomberg's articles and may pursue claims against subscribers who violate the terms of the subscription agreement, ECF 12 at 1, here Capitol Forum is proceeding not against its own subscribers but against a third-party, Bloomberg, that is engaged in newsgathering and news reporting functions.

## ARGUMENT

## I.   CAPITOL FORUM'S COPYRIGHT INFRINGEMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Capitol Forum does not dispute that the Complaint identifies neither the allegedly infringed nor the infringing works at issue.  Instead, it implicitly concedes that the information is missing from the Complaint, stands on the decision not to amend, argues that there is no such requirement, and alternatively attempts to supply the missing allegations through its opposition brief and its exhibits.  Capitol Forum is wrong in all respects.  As a result, the copyright infringement claims should be dismissed with prejudice.[1]

### A.   For Purposes Of Rule 12(b)(6), Ordinary Notice Pleading Under Rule 8 Requires A Copyright Infringement Plaintiff To Identify The Allegedly Infringed And Infringing Works

Capitol Forum's argument in defense of its refusal to amend is utterly wrong as a matter of black-letter, well-settled law.  As Bloomberg's opening brief explained, ordinary notice pleading under Rule 8 requires a copyright plaintiff to identify the infringed and infringing works in its complaint.  *See* ECF 10-1 at 8–11.  A mountain of case law has so held.  In *Newborn*, for example, this Court dismissed a copyright infringement claim for failing to satisfy Rule 8's basic requirement because it was "virtually impossible to determine what materials have allegedly been infringed."  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 187 (D.D.C. 2005) (Walton, J.); *see also Bitetto v. Rometty*, 2018 WL 941736, at *3 (N.D.N.Y. Feb. 16, 2018) ("to adequately plead

---

[1]   Bloomberg recognizes that, for Rule 12(b)(1) purposes, a plaintiff may add information without amending the complaint, *see Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (on Rule 12(b)(1) motion, the court "need not limit itself to the allegations in the complaint" but rather "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case"), and Capitol Forum has now arguably done so by identifying its copyright registrations, *see* ECF 12-1 at 5.  But even if Capitol Forum has fixed its Rule 12(b)(1) deficiency regarding the registrations, it has not corrected its Rule 12(b)(6) deficiency regarding identifying the allegedly infringed and infringing works, as explained below.  *See Hilska v. Jones*, 297 F. Supp. 2d 82, 88 (D.D.C. 2003) ("claims that are not frivolous under Rule 12(b)(1) may nevertheless warrant dismissal pursuant to Rule 12(b)(6) for failure to state a claim").

copyright infringement, Plaintiff must identify which of his copyrighted works form the basis of his claim"); *Mahnke v. Munchkin Prod, Inc.*, 2001 WL 637378, at *6 (S.D.N.Y. June 7, 2001) (dismissing copyright infringement claims for failure to identify with particularity a specific infringing work); *Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1166 (D. Colo. 1991) (plaintiff "must identify the allegedly infringing works" in a copyright infringement complaint). Capitol Forum's attempt to distinguish the complaints in these cases as being "general and confused," ECF 12 at 7–8, does not change the clear rule that a complaint must identify the works at issue to satisfy Rule 8's notice standard. The crux of the question is this: If the four corners of a Complaint do not identify a single allegedly infringed or infringing work, has the Complaint sufficiently pleaded a copyright infringement claim? The answer, plainly, is "no," it has not. "[V]ague statements are simply insufficient to put the defendants on notice of the claims against them." *Newborn*, 391 F. Supp. 2d at 188.

Not even the cases Capitol Forum cites say otherwise. Those case citations each merely make the general observation that copyright infringement claims are not subject to a heightened pleading standard, such as the requirements for pleading fraud in Rule 9. ECF 12 at 6–7. But *Newborn* and its ilk were never based upon a Rule-9-type heightened pleading requirement; they rest simply on the ordinary Rule 8 notice pleading requirement. Capitol Forum's own case citations, if anything, confirm the need to identify the allegedly infringed and infringing works in a complaint. Each plaintiff in each case cited by Capitol Forum pleaded far more specifically than Capitol Forum is willing to plead.[2]

---

[2]   None of Capitol Forum's cases support the notion that a copyright infringement complaint is sufficient despite failing to identify either infringing or infringed work; the plaintiffs in those cases satisfied that requirement. *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 674 (D. Md. 2009) (plaintiff "has attached a list of the photographs and the copyright registration numbers to the complaint"); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 963 (N.D. Tex. 2006) ("Plaintiffs assert that they own certain copyrighted sound recordings, including the

**B.**     **Rule 12(b)(6) Does Not Allow Capitol Forum To Supply The Missing Allegations Through Its Opposition Brief And Exhibits Thereto**

Capitol Forum incorrectly suggests that it can supply the concededly missing allegations through its opposition brief and the exhibits thereto.  *See* ECF 12-1–12-6.  To the contrary, "[a] plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011); *see also, e.g.*, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Klein v. Am. Land Title Ass'n*, 926 F. Supp. 2d 193, 200–01 (D.D.C. 2013) (Walton, J.) ("the Court will not sanction [plaintiff's] improper attempts to reformulate his claims via his opposition briefs"), *aff'd*, 560 F. App'x 1 (D.C. Cir. 2014).[3]

---

sound recordings listed on Exhibit A attached to their complaint"); *Pfeffer v. Empire Stat, Inc.*, 2006 WL 3096027, at *2 (S.D.N.Y. Nov. 1, 2006) (complaint identified defendant's report that "copied Plaintiff's 'report text, format and style'" as well as plaintiff's "certificates of registration dated January 2, 2001, for certain of her works from the United States Copyright Office"); *LTM Int'l, Inc. v. Brown*, 2005 WL 1279043, at *2 (S.D. Fla. Apr. 15, 2005) (complaint identified "six copyrighted designs," defendant's "infringing t-shirts [that] were copied from [plaintiff's] designs," and providing "photographic depictions of the copyrighted designs and several of the infringing t-shirts"); *Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826, 828 (S.D.N.Y. 1990) (plaintiffs owned valid copyrights for sound recordings "including specific recordings listed in ¶ 16 of the amended complaint" and the "pleading contains detailed descriptions" of defendants allegedly infringing conduct); *Carter v. Pallante*, 16-cv-06786, ECF 1 ¶¶ 55, 75 (N.D. Ill. June 28, 2016) (complaint identified copyrighted works at issue and attached copies of registrations); *McDonald v. K-2 Indus., Inc.*, No. 10-cv-06678, ECF 1 ¶¶ 9, 16 (W.D.N.Y. Nov. 30, 2010) (complaint identified 61 copyrighted works, attached registration certificates for each work, and included comparison exhibit of the alleged "knock-off images and products"); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-5780, ECF 1 ¶¶ 31, 34 (N.D. Cal. Dec. 30, 2008) (complaint identified copyright registration numbers for works at issue); *see also Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009) (rejecting argument that plaintiff must allege *when* infringement occurred; not addressing requirement that plaintiff identify *which works* were allegedly infringed).

[3]   Recognizing that its tortious interference claim is preempted and not viable, Capitol Forum improperly attempts to excise the claim from the lawsuit via a notice of dismissal without prejudice under Rule 41(a)(1)(A).  *See* ECF 13. Rule 41(a)(1)(a), however, provides for the dismissal of entire actions only, not individual claims.  *See, e.g., Perry v. Schumacher Grp. of Louisiana*, 891 F.3d 954, 958 (11th Cir. 2018); *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2010); *Hells Canyon Pres. Council v. United States Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005); *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362 (3d ed.) ("A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15.").  Since, as Capitol Forum now concedes, the claim is preempted, it should be dismissed with prejudice.

Capitol Forum does not escape this rule through its assertion that its Complaint necessarily relied upon the allegations belatedly offered in its opposition and exhibits.[4]   "[A] plaintiff's complaint 'necessarily relies' on a document when the complaint "quote[s] from and discuss[es a document] extensively."  *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar. Officers*, 75 F. Supp. 3d 294, 306 (D.D.C. 2014).  Here, Capitol Forum does not and cannot identify a single paragraph of the Complaint that quotes these exhibits or discusses them extensively.  Without that information, Bloomberg is not given proper notice of the allegation and an opportunity to properly respond to it.

Even now, while Capitol Forum may have belatedly identified the allegedly infringed works in its opposition brief and exhibits thereto, it has yet to identify the allegedly *infringing* Bloomberg works, and it has failed to allege the elements of contributory infringement for the newly identified allegedly infringed works.

Instead of submitting a properly pleaded claim putting Defendants on full and fair notice, Capitol Forum discusses one example.  ECF 12 at 9–10.  This approach fails to satisfy notice pleading and amply illustrates why the amendment-through-opposition approach is particularly problematic and improper.  But based on a review of the one proffered example, Bloomberg has solid grounds for dismissal of Capitol Forum's copyright infringement claims, based on (1) failure to show that Bloomberg substantially participated in any allegedly contributory infringement; (2) a lack of substantial similarity between the Capitol Forum work and any Bloomberg work and/or fair use by the Bloomberg work of the Capitol Forum work.  *See* 17 U.S.C. § 102(b) (protecting

---

[4]   The longstanding rule is that, on a motion to dismiss, a court must limit its analysis to the four corners of the complaint, facts of which the court can judicial notice, and "documents attached as exhibits or incorporated by reference, documents upon which the plaintiff's complaint necessarily relies."  *Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017), (citing *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9), *aff'd*, 2018 WL 5927921 (D.C. Cir. Nov. 7, 2018) (D.D.C. 2016)).

the expression of an idea but not the idea itself); *id.* § 107 (recognizing "news reporting" as a presumptively fair use and identifying four non-exclusive factors to determine if a use is fair); *see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 898 (S.D.N.Y. 2016) ("A plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement, for a claim of contributory infringement to stand.").

Given Capitol Forum's own selection of this deficient example as presumably its best one, this Court should dismiss the copyright infringement claims with prejudice now. *First*, Capitol Forum's exhibit purporting to show correspondence between Bloomberg's reporter and the hedge fund evinces no substantial participation by Bloomberg in the allegedly infringing conduct, since the hedge fund forwarded Capitol Forum's article about Fresenius's potential acquisition of Nx Stage Medical without prompting by Bloomberg. *See* ECF 12-6. This fact alone suggests that the conclusory allegations in the Complaint are insufficient to state a claim for contributory infringement. *See, e.g.*, *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (dismissing contributory infringement claim where complaint contained "no factual assertions describing how [defendant] enabled, induced, or facilitated the infringement of the photographs"); *Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.*, 2013 WL 2357586, at *3 (N.D.Ill. May 29, 2013) (dismissing contributory infringement claim where complaint failed to identify "any factual basis suggesting that [defendant] induced or encouraged infringement").

*Second*, it is evident from the proffered example that Capitol Forum will be unable to contend that Bloomberg's work is substantially similar to Capitol Forum's, a requirement to establish direct copyright infringement. Even a cursory comparison reveals the difference in structure, length, and style between Capitol Forum's work and Bloomberg's work. *Compare* ECF 12-2, *with* 12-3. This fact is also sufficient for a court to declare that Bloomberg's news alert is

not infringing as a matter of law.  *See Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 293 (S.D.N.Y. 2016) (granting motion to dismiss where alleged infringing work was not substantially similar to film at issue); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'").  The Court can see for itself that that the works are not at all substantially similar.

*Finally*, the same example identified in Capitol Forum's opposition amply demonstrates that Bloomberg is within the presumptively fair use of "news reporting."  17 U.S.C. § 107.[5] Further dispositive in favor of a ruling of fair use is that, as explained in the Introduction and in Point II.A, *infra*, Bloomberg's reports do not significantly undermine Capitol Forum's market for its own work or its incentive to create it because Capitol Forum's work is published sufficiently in advance of Bloomberg's that any subscriber or potential subscriber who seeks to use the information in market trading must subscribe to Capitol Forum.  Here, as in prior cases, Rule 12(b)(6) dismissal based on fair use is appropriate.  *See, e.g.*, *Righthaven LLC v. Realty One Grp., Inc.*,  2010 WL 4115413, at *2 (D. Nev. Oct. 19, 2010) (granting motion to dismiss and finding defendant's use "falls within the Fair Use doctrine"); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573, at *7 (N.D. Cal. July 17, 2009) ("At bottom, the Court finds that Defendant's use of the photographs in both their unaltered and altered format was a fair use within the meaning of the Copyright Act and GRANTS Defendant's motion to dismiss Sedgwick's second claim for copyright infringement."), *aff'd*, 422 F. App'x 651 (9th Cir. 2011); *Payne v.*

---

[5]    Capitol Forum's claim that the "fair use doctrine extends only to facts, and not analyses," ECF 12 at 9, is a fundamental misstatement of the law.  One can make fair use of *any* portion of a copyrighted work.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (finding that "parody, like other comment or criticism, may claim fair use under § 107").

*Courier-Journal*, 2005 WL 1287434, at \*5 (W.D. Ky. May 31, 2005) (same), *aff'd sub nom. Payne v. The Courier-Journal*, 193 F. App'x 397 (6th Cir. 2006).

## II.   CAPITOL FORUM'S "HOT NEWS" MISAPPROPRIATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

Having presented fatally weak infringement claims that should be dismissed with prejudice, Capitol Forum's Hail Mary play is to tack on a claim for "hot news" misappropriation, a tort that has never been recognized under D.C. law and that would not apply on the alleged facts in any event.  As explained in Bloomberg's opening brief (ECF 10-1, at 15–17), the federal statutory copyright scheme has fully occupied the field here, and any additional tort based on the same factual allegations is simply preempted.   Even assuming the "hot news" claim somehow survived preemption, Capitol Forum's allegations fail to satisfy the elements required where the tort has been recognized (under New York law).  For that reason, this claim could be dismissed outright now, as discussed below.   Additionally, the "hot news" claim can be dismissed outright based on the fact that D.C. law has never recognized the tort.[6]  Courts have interpreted a lack of state law supporting "hot news" misappropriation as a basis to dismiss the claim.  *See Scrappost, LLC v. Peony Online, Inc.*, 2017 WL 697028, at \*7 (E.D. Mich. Feb. 22, 2017) (the court could dismiss plaintiff's "hot news" claim on the basis that the court "located no authority to support a 'hot news'

---

[6]   Capitol Forum equivocates on which state's/district's law it is invoking—District of Columbia, ECF 12 at 15-16, or New York, *id.* at 12—and provides no choice-of-law analysis.  At one point, Capitol Forum also cites a Maryland case.  *See* ECF 12 at 18 (citing *GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,* 27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975) for elements of "hot news" misappropriation). Capitol Forum identifies no contacts, however, between the instant case and Maryland.  D.C is the proper choice of law here, because "a substantial part of the events giving rise to the claims occurred in [D.C.]," ECF 1 at ¶ 12. The District of Columbia has indisputably never recognized such a claim, and it would be a novel and substantial ruling for this Court to do so here, especially given significant modern criticism of the claim as contrary to public policy.

misappropriation claim in Michigan" and plaintiff "fails to cite a single case indicating that Michigan courts have adopted 'hot news' misappropriation causes of action").

For either reason outlined below, Capitol Forum's preempted "hot news" claim is defective in ways that cannot be remedied via amendment.  Dismissal with prejudice is, therefore, warranted now.

A.    **Capitol Forum Cannot Satisfy The Elements Of The New York Tort That Could Potentially Survive Federal Preemption**

While the Second Circuit has held that a narrow "hot news" misappropriation claim under New York law survives federal preemption, the surviving claims have been limited to cases in which the following elements are satisfactorily alleged:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

*NBA*, 105 F.3d at 845.

These are elements of the *cause of action* that must be sufficiently pleaded to survive Rule 12(b)(6) dismissal, not (as Capitol Forum contends, ECF 12 at 18) factors merely relevant to a preemption defense that might be adjudicated after the Rule 12(b)(6) stage.  *See NBA*, 105 F.3d at 852 (listing "the elements central to an *INS* claim"); *see also Ste. Genevieve Media, LLC v. Pulitzer Missouri Newspapers, Inc.*, 2016 WL 6083796, at *4 (E.D. Mo. Oct. 18, 2016) (listing the Second Circuit's "elements necessary to establish a 'hot news' claim").  Capitol Forum tellingly concedes as much in the Introduction to its opposition brief, conceding that *NBA* "enunciated" the "*elements* of this claim."  ECF 12 at 2 (emphasis added).

Capitol Forum's inability to allege free riding that would "so reduce" its incentive to produce articles (*NBA*'s fifth element) is dispositive here.  The Second Circuit, in keeping with the

recognition that only the narrowest of claims can survive preemption,[7] stringently phrases this element as "the ability of other parties to free-ride on the efforts of the plaintiff or others would *so reduce* the incentive to produce the product or service that its existence or quality would be *substantially threatened*." *NBA*, 105 F.3d at 845 (emphasis added). Capitol Forum, however, misleadingly waters down this element (in Capitol Forum's favor) by eliding the italicized words; according to Capitol Forum, the element is: "the ability to free-ride on the back of its direct competitor would threaten or reduce the plaintiff's incentive to continue its level of investigation and reporting." ECF 12 at 12.

Capitol Forum's Complaint demonstrates that it cannot satisfy the free riding element as stringently described by *NBA*. Specifically, Capitol Forum concedes that "the release of [Capitol Forum's] reports will often affect the price of publicly traded stocks … in a matter of minutes," ECF 1 ¶ 2, and that any allegedly infringing Bloomberg report is published *later*, *see id.* ¶ 4 ("Within minutes of the release of many of Capitol Forum's reports, Bloomberg will surreptitiously obtain the report from one or more of Capitol Forum's subscribers, *and then* republish a summary of that report on its own 'First Word' copyrighted subscription service ….") (emphasis added). In other words, any potential subscriber who wishes to obtain a market advantage from the information must obtain it from Capitol Forum, because the stock price will have already moved by the time Bloomberg's work is published. That audience is plainly sufficient to provide Capitol Forum an adequate "incentive to produce the product or service." *NBA*, 105 F.3d at 845. *See also, e.g.*, *Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*, 808 F.2d 204, 209 (2d Cir. 1986) ("The 'hot' news doctrine is concerned with the copying and publication of

---

[7] *See, e.g.*, *Theflyonthewall.com, Inc.*, 650 F.3d at 898 ("It is this sort of patchwork protection that the drafters of the Copyright Act preemption provisions sought to minimize, and that counsels in favor of locating only a 'narrow' exception to Copyright Act preemption.").

information gathered by another before he has been able to utilize his competitive edge."); *Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*, 1994 WL 606171, at *5 (N.D. Ill. Oct. 24, 1994) ("The evidence shows that defendant's use of the quoted material occurred only after plaintiff had already published its newspaper articles.  Consequently, plaintiff received the full value of its newsgathering efforts under these facts.").

As with its copyright infringement claims, the example that Capitol Forum features in its opposition brief (concerning reports on Fresenius Medical Care's potential acquisition of Nx Stage Medical) illustrates well that Bloomberg's reports do not "so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *NBA*, 105 F.3d at 845.  Capitol Forum published a report at 11:00 a.m. on August 22, 2016, regarding the potential acquisition and the risk that antitrust concerns could foil it. *See* ECF 12 at 9–10; ECF 12-2.  Within less than five minutes, Nx Stage Medical's stock price dropped from approximately $29.10 to $28.60, presumably because investors reviewed the Capitol Forum report and concluded that the acquisition was now less likely to happen.  Ex. A; *see Ross v. Walton*, 668 F. Supp. 2d 32, 41 n.7 (D.D.C. 2009) ("[C]ourts may take judicial notice of publicized stock prices without converting a motion to dismiss into summary judgment."). *Thirty-six minutes later*, well after the stock price had already dropped, Bloomberg issued its own report. *See id.*; ECF 12-3.  Thus, any member of the public who had wanted to use the information about antitrust risk to unload (or to short sell) Nx Stage Medical's stock would have had to subscribe to Capitol Forum; a Bloomberg subscription would have provided the information too late.  As such, Capitol Forum still has a sizeable audience for its service and ample incentive to provide the service, regardless of Bloomberg's reports.

In the cases cited by Capitol Forum, by contrast, the defendant's work was published before, or nearly instantaneously with, plaintiff's, meaning that there was no time lag during which the plaintiff had an exclusive audience from which it could profit.  *See, e.g., Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*, 2014 WL 4629967, at *3 (S.D.N.Y. Sept. 15, 2014) (defendant "often broadcasts [plaintiff's] headlines within five seconds or less of the original posting"), *report and recommendation adopted*, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014); *X17, Inc. v. Lavandeira*, 563 F. Supp. 2d 1102, 1103 (C.D. Cal. 2007) (allowing "hot news" claim where defendant "has at times deprived [plaintiff] of a distinct interest in being the first to publish" photos at issue); *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 238–39 (1918) ("pirated news [was] placed in the hands of defendant's readers sometimes simultaneously with the service competing Associated Press papers, occasionally even earlier").  That is not the case here, where the delay between Capitol Forum's reports and Bloomberg's news alerts, coupled with the immediate stock market changes prompted by Capitol Forum's reports (as alleged in Capitol Forum's own Complaint, ECF 1 at ¶ 2), makes it necessary for investors  to subscribe to Capitol Forum.

In addition, that Bloomberg's works always attribute to Capitol Forum, *see* ECF 1 at ¶ 22, further supports (even if it does not independently establish) that the *NBA* free-riding element is not satisfied here.  For example, unlike the defendant (INS) in *INS*, who did not acknowledge the Associated Press as the source of the information, 248 U.S. at 242, Bloomberg always credits Capitol Forum as a source.  *See* ECF 1 ¶ 22.  Again, the cases Capitol Forum cites provide it no support—in each, the defendant published the information as its own without attribution.  *See, e.g., Dow Jones & Co.*, 2014 WL 4629967, at *3 (defendant "does not credit [plaintiff] or other news providers for the stories it copies"); *BanxCorp*, 723 F. Supp. 2d at 612 (plaintiffs adequately alleged free riding where defendants used plaintiffs' indices without a license and without

attribution); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 457 (S.D.N.Y. 2009) (defendant rewrote or copied plaintiff's stories in full and published them as its own); *INS*, 248 U.S. at 242 (INS sold AP's "goods as its own").   As such, even if this claim survived preemption, Capitol Forum has not and cannot allege "hot news" misappropriation, and this claim should be dismissed with prejudice.

**B.      The "Hot News" Tort Is Obsolete And Should Not Be Recognized Under District Of Columbia Law**

If this Court agrees that Capitol Forum has failed to allege a "hot news" claim under New York law as interpreted by the Second Circuit, the Court need not proceed further.   If the Court disagrees, however, it should address the choice-of-law issue raised (but not briefed) in Capitol Forum's opposition and rule as a matter of law that "hot news" misappropriation is inconsistent with public policy and should not be recognized for the first time by D.C. law.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state— here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). The Court must first "determine whether a true conflict exists between the laws of the two jurisdictions—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992).   If there is a true conflict, the Court should "balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in the resolution of the issue." *Lamphier v. Wash. Hosp. Ctr.*, 524 A.2d 729, 731 (D.C. 1987).   That balancing process considers factors including:   (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, place of incorporation and place of business of the parties; and (4) the place where the relationship between

the parties is centered.  *See Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 97–98 (D.D.C. 2006) (citing Restatement (Second) of Conflict of Laws § 145(2)).

Here, on the threshold issue whether there is a true conflict, this Court would have to decide whether D.C. law even recognizes the tort of "hot news" misappropriation.  It has not to date, and it likely will not in the future.  Capitol Forum incorrectly characterizes "hot news" misappropriation as a vibrant tort that is being recognized more, not less, frequently.  *See* ECF 12 at 15.  In fact, the tort is near obsolete now that the Internet facilitates a constant exchange of information, and news reporting often happens in real time.  As Judge Richard Posner has argued, "[c]larity of analysis would be enhanced if the doctrine and the very word were banished from discussions of intellectual property law."  Richard A. Posner, *Misappropriation: A Dirge*, 40 Hous. L. Rev. 621, 641 (2003).  The commentary to the Restatement of Unfair Competition agrees, noting that *INS*, while frequently cited, "has been sparingly applied" because "the federal patent and copyright statutes now preempt a considerable portion of the domain in which the common law tort might otherwise apply."  Restatement (Third) of Unfair Competition § 38 cmt. b (1995).  "The better approach, and the one most likely to achieve an appropriate balance between the competing interests, does not recognize a residual common law tort of misappropriation."  *Id.*

If the Court finds that D.C. law would not recognize the tort, the Court would then have to consider the Restatement factors quoted above in order to decide whether to choose D.C. or New York law.  Here, the factors weigh in favor of finding that D.C. law applies to Capitol Forum's claims.  While Bloomberg is based in New York, ECF 1  ¶¶ 8–9, Capitol Forum is based in D.C., ECF 1 ¶ 7, and "a substantial part of the events giving rise to the claims occurred in [D.C.], *id.* ¶

12.[8]  Thus, the Court should rule that D.C. law applies to Capitol Forum's claims and that, as explained above, D.C. law does not recognize the "hot news" misappropriation tort.

## **CONCLUSION**

Capitol Forum proceeds here in opposition, rather than amending its facially deficient copyright claim, in the hopes that it can somehow burden-shift and proceed toward discovery without exposing the weakness of its claims. When the one opposition-proffered example of supposed infringement here is scrutinized in the side-by-side view that a properly pleaded claim would make fully possible, the deep deficiencies in Capitol Forum's allegations are disclosed. There is no substantial similarity between Capitol Forum's long-form 3,500 word analysis, which moves or is likely to move a financial market, and Bloomberg's bullet point reporting on that newsworthy analysis.  Mindful that its copyright allegations will thus fall far short, hoping to skirt preemption, and recognizing that it will need to make new law to have any cognizant claim, Capitol Forum stretched to revive the obsolete "hot news" misappropriation doctrine, but missed that mark as well.

For the foregoing reasons, Bloomberg respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:  March 21, 2019
        Washington, D.C.

                                            Respectfully submitted,

                                            /s/ Tara M. Lee
                                            Tara M. Lee (#MD17902)
                                            Quinn Emanuel Urquhart & Sullivan, LLP
                                            1300 I St. NW, Suite 900
                                            Washington, D.C. 20005
                                            Telephone:  (202) 538-8000

---

[8]  Capitol Forum alleges that "Bloomberg regularly transacts business in the District of Columbia, including by maintaining an office [in the District]," ECF 1 ¶ 10, but Capitol Forum nowhere asserts that such business or office has any relevance to the causes of action alleged in the Complaint.

Fax:  (202) 538-8100
taralee@quinnemanuel.com

Robert L. Raskopf (*pro hac vice* pending)
Jessica A. Rose (*pro hac vice* pending)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
robertraskopf@quinnemanuel.com
jessicarose@quinnemanuel.com

*Counsel for Defendants Bloomberg L.P.*
*and Bloomberg Finance L.P.*